WALTER C. GLINES, Appellant, v. THEO. R. APPEL REALTY COMPANY, a corporation, et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted May 8, 1919.
Opinion Filed June 5, 1919.

1. **MORTGAGES AND DEEDS OF TRUST:** Sale Under Deed of Trust: Injunction: Accounting: Debtor Entitled to Accounting. In an action to restrain the sale of real estate under a deed of trust, securing the payment of a number of notes due and payable consecutively, etc., and for an accounting, etc., and it appearing that plaintiff bought the real estate subject to such deed of trust and assumed payment of the indebtedness and assigned to defendant all the rents to be collected from the property to apply on the payment of such notes and there was a long account of debits and credits, rents collected, costs of repairs, interest charges, commissions, all to be considered and determined on, *held* the case presents a clear one in equity requiring an accounting between the parties, and the trial court erred in denying this and dissolving the temporary injunction and dismissing the bill.

2. ———: ———: ———: ———: ———. In such case, even though there was a showing that there was an amount due on the notes under which the foreclosure was to be had, it was still necessary to go into and take an accounting as between the parties covering all the receipts and expenditures and payments on account

of the indebtedness, as plaintiff was clearly entitled to know exactly how much in fact was due on the whole indebtedness.

3. ——: ——: ——: ——: ——. Furthermore, where the primary object of the action was for an accounting between the parties, plaintiff as debtor, the Realty Company as creditor, the final action of the trial court in dissolving the temporary injunction and allowing the sale under the deed of trust to proceed and in not pretending to state the account between the parties, even as to the notes under which the foreclosure was being had, was error.

4. ——: ——: ——: Condition Precedent: Tender. Where plaintiff purchased real estate and assumed an indebtedness evidenced by a series of notes secured by deed of trust, and by the terms of the deed of trust when default occurred in the payment of any one of the notes, all matured, and assigned to defendant all the rents to be collected from the property to be applied on the payment of such notes, and plaintiff in a suit to restrain the sale of the property under such deed of trust, and for an accounting, denied that there was anything due on the notes involved and avers ignorance of the state of his account, *held* a tender could not be made.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED.

*W. G. Carpenter* and *Aug. Walz* for appellant.

(1) Ordinarily, until the mortgagee enters for breach of condition, and in many respects even until final foreclosure, the mortgagor continues to be the owner of the estate, and entitled to possession of same, and has a right to lease the estate and in every way deal with it as owner. Kennett v. Plummer, 28 Mo. 142; Masterson v. West End Narrow Gauge R. Co., 72 Mo. 342; Dickerson v. Bridges, 147 Mo. 235, 243. The assignment of rents as additional security for the loan on the property, as disclosed by the evidence in this action, may raise two propositions for consideration. 1. Did the assignment divest the mortgagor of possession of the property and put the possession into the

defendant mortgagee? Or, 2. Did possession remain with the mortgagor and merely license mortgagee to go on the property to collect rents? The case of Armour Packing Co. v. Wolff Co., 59 Mo. App. 665, would indicate that the second proposition is in law the legal *status* of such an assignment, but under the testimony adduced in this case it would appear that the parties themselves regarded the possession of the property as in the mortgagee. (2) A mortgagee who has obtained possession of the mortgaged premises must account for the rents and profits received by him from the premises. Anthony v. Rogers, 20 Mo. 281; Stevenson v. Edwards, 98 Mo. 622; Baker v. Cunningham, 162 Mo. 134; Benton Land Co. v. Zeitler, 182 Mo. 272; Hannah v. Davis, 112 Mo. 601; Gooch v. Botts, 110 Mo. 419; Bender v. Zimmerman, 122 Mo. 194; Stillwell v. Hamm, 97 Mo. 379. The account must not be a general statement by the mortgagee that the result of rights as disbursed by them had reduced the mortgage debt to a certain amount. The mortgagor is entitled to know what he is required to pay, and this cannot be determined without an itemized account. 3 Jones on Mortgages, sec. 1120, b. p. 743, and cases there cited. In whatever light we may regard the assignment of rents, the mortgagee in any event takes possession of the rents and profits in the *quasi*-character of trustee or bailiff of the mortgagor. In equity he must apply them as an equitable set-off to the amount due on the mortgage, and since the mortgagee's accounting is a matter purely of equitable jurisdiction, he cannot be compelled in any other way to account. 3 Jones on Mortgages, sec. 1115, p. 135, and cases there cited. (3) The court in the trial of this cause indicated, on page 107, Abstract of Record, that he was determining only the question as to injunction; the only right plaintiff asserted to an injunction came through his right to an accounting, and if entitled to an accounting, his right to the injunction was unquestioned, and the court so indicated; hence the finding dismissing the bill was a finding that plaintiff

was not entitled to an accounting. The decisions under Point 2, *supra*, clearly and unquestionably establish the right to an accounting under the relationship here shown. It only remains to be shown that no accounting was in fact given by defendant before plaintiff filed his action to entitle him to the injunction prayed. This point involves the testimony and argument only, and will be taken up under Argument. (4) An injunction is the proper remedy where the trustee is attempting to wrongfully sell property, when an accounting should properly be made to determine the amount due on the mortgage. Hammerslough v. Kansas City B. & L., 79 Mo. 80; 19 Ruling Case Law, p. 619, sec. 435; Muller v. Stone, 84 Va. 834; Ekeberg v. Mackay, 114 Minn. 501. (5) The petition in this case, although primarily asking for an accounting and injunction in aid of such accounting, does not tender or offer to pay any amount that may be found due by such accounting. A general denial was filed to this petition; the defendant went to trial without raising this point as a defect in the petition. Under the facts, as alleged in the petition and under the evidence taken in the case, it was probably immaterial whether such tender was made or not. It was apparent that the amount demanded by defendant was improper, and, furthermore, the defendant, by going to trial without objecion, waived any right to raise that question now. Thacker v. Tracy, 8 Mo. App. 315; Potter v. Schaeffer, 209 Mo. 586; Koslosky v. Block, 191 Mo. App. 257. (6) The trustee in this case was president of the defendant beneficiary who held the mortgage, and, likewise, held possession of the property and was collecting all income from the property, and owed the plaintiff the duty to account for same and the plaintiff could expect no protection from this trustee. The trustee should not be personally interested in the debt secured, nor closely related to either party, by blood or interest, nor a paid employee of the beneficiary, and he should be impartial and in-

different between the parties interested. Long v. Long, 79 Mo. 644, in matter of Mansfield, 17 Mo. App. 684; Chas. Green R. E. Co. v. St. Louis Mutual House Building Co., 196 Mo. 358; Landrum v. Union Bank, 63 Mo. 348; Hanson v. Neal, 215 Mo. 256. (7) The power of sale in a deed of trust is a creature of contract and not of law, and must be strictly followed in ordered to render its exercise legitimate. Stewart v. Brown, 112 Mo. 171; Schanewerk v. Hoberecht, 117 Mo. 22; Reynolds v. Kroff, 144 Mo. 433.

*Robert W. Hall* for respondents.

REYNOLDS, P. J.—Plaintiff, owner of the equity of redemption in a number of lots on North Taylor Avenue in the city of St. Louis, bought them subject to a deed of trust in which one A. R. Fleming, co-defendant herein, was trustee, the deed of trust securing the payment of thirty-five notes, of date March 27, 1914, each note for the sum of $500, with interest at six per cent. per annum after maturity, and one other note for the sum of $41.28, it is said in the petition but obviously that is an error, as it appears that this note was for $452.26. The notes are due and payable consecutively and from one to thirty-six months after date. Plaintiff, in buying subject to this deed of trust, assumed payment of the indebtedness. On September 12, 1914, by an agreement entered into by and between plaintiff and the defendant Realty Company, it was stipulated that the plaintiff should assign, and it is averred that plaintiff did assign, to that defendant all the rents to be collected from the property, that defendant to apply the rent to the payment of the notes above mentioned. It is further averred that thereafter the collection of rents was in the sole control of defendant Realty Company, and that the amount of rents collected, together with such sums of money as had been paid to that defendant by plaintiff, is more than sufficient to pay all of the notes that had become due and payable up to date,

that is June 14, 1915; and it is charged that the defendants, that is the Theo. R. Appel Realty Company and A. R. Fleming, trustee, now claim that five of the notes are due and unpaid, which plaintiff denies. Plaintiff further avers that the defendants have failed and refused to account to him for the rents so collected and that he has been unable to learn from them the amount of rentals collected from the property; that defendant Fleming is the president of the Theo. R. Appel Realty Company, and that that company now claims to be the owner of the notes mentioned, but it is averred that Fleming is now the owner in whole or in part of the notes, and that he and the Realty Company, of which he is president, have wrongfully conspired together to deprive plaintiff of his property and to that end have caused the property to be advertised for sale under the power of sale contained in the deed of trust, the sale being set for June 14, 1915, although plaintiff avers there is nothing actually due on the notes, and although A. R. Fleming, trustee, as president of the company claiming to own and hold the notes, and as owner or holder of one or more of the notes, is not a disinterested party and is disqualified to sell the property under the power of sale contained in the deed of trust. It is further averred that a sale of the property under the power of sale, although there is nothing due on the notes, and although Fleming is disqualified to act as trustee, would cast a cloud on plaintiff's title to the property; that unless the sale of the property is restrained by the court, it will be sold against the will and against the rights of plaintiff and without any right in the defendant Fleming to make the sale, and that plaintiff will be in great danger of losing his title to the property; that his damages, in the event of the unlawful sale being made, cannot be adequately computed and would be irreparable, and hence plaintiff would have no adequate remedy at law. The prayer is that defendants, and each of them, be enjoined and restrained from selling the property under and by

virtue of the power of sale in the deed of trust and under and by virtue of the advertisement now published for the sale; that an accounting be had between plaintiff and the defendants to ascertain the amount of rentals collected by defendants, or either of them, and the disposition of the rentals; that a new trustee be appointed in place and stead of Fleming, to act as trustee in the deed of trust, and that an order be issued at once temporarily restraining the defendants from proceeding with the threatened sale of the property under the power of sale contained in the deed of trust until the matters herein set forth have been heard and adjudicated by the court, and for general relief.

A temporary injunction was issued, restraining the sale, bond being given, and, filing an answer, defendants moved to dissolve the injunction.

The answer is a general denial.

The motion for the dissolution of the injunction is based on the ground that the statements contained in the petition upon which it was granted are not true and that the temporary injunction was improvidently issued. The cause was heard before the court as in equity and a decree entered dissolving the temporary injunction and dismissing the case. From this plaintiff appealed.

Plaintiff introduced his testimony tending to show that there had been no accounting between him and the realty company of matters connected with the transaction. After plaintiff's testimony had been introduced and defendants were introducing their evidence, counsel for defendants asked a witness to take the statement, which had been introduced by plaintiff, and concerning which the witness had been interrogated, and give the gross amount of rents collected up to May 20, 1915, at the time the foreclosure proceedings were had, meaning by that the date of the advertisement by the trustee of the sale, and to then figure up the amount of the repairs that were made and give the separate figures. The

witness answered that he could not make that from the 20th of May, which was the date of the advertisement; that the statements were limited to the end. of each month; that he would give them if they would ask for them up to the 30th 'of May or the 30th of April. He was then asked to give them up to the 30th of April. Thereupon the court stated to counsel that they need not think that he (the court) was going into all the details of this accounting; that if he found an accounting necessary he would send it to a referee; that all he wanted to know was the amounts that both parties claim, so as to see whether or not this injunction against the sale of that property was proper or not; that if he found the injunction was all right he would order an accounting. Counsel for defendants stated that he would like to show what amount had been collected and then show the total up to October 30th, evidently meaning to October 30th, 1915, the trial being had on November 10th of that year, to which the court said: "The total is the matter we are interested in;" that if defendants were attempting to sell under a deed of trust without authority, when the debt had been paid, then of course the injunction was properly granted; that if at that time defendants had made no misappropriation of their obligation of payment—if they had made mistakes, or if there was any reason under their contract why they should not have sold that property, defendants would be enjoined and the court would then order an accounting to show how much they owe, if anything. Defendants then stated that with reference to making the injunction perpetual, there would be a question whether there was any money due defendants, to which the court said, "Yes; but I am not going into the details of an accounting at this time," to which counsel answered that he would make that clear and specific, and merely wanted to show the amount of repairs made and the cost of them, and the amounts that were charged up against plaintiff, and he went into testimony accordingly.

It should be stated that plaintiff's testimony was in considerable detail and quite voluminous as to transactions in the matter, the principal claim being that the defendant realty company had, without authority, charged commissions for collecting rentals, and that plaintiff had never had a complete statement of rentals and expenses; that defendant realty company had no authority to collect rentals, and had made repairs, or paid for repairs, of which he had no account, without authority from plaintiff. But the only statement of account that can be said to have been introduced by plaintiff was one of date May 27, 1915, and referred to above. According to that, which purported to be an account of the notes then due and interest on them, and of the credits, generally items in gross, there was a balance due of $250.85, leaving twenty-nine notes for $456.75 each and one for $408.99, totalling $13,654.16 and interest on them, $984.95 unpaid but not then due on a total unpaid on the mortgage debt of $14,889.96, as also the $250.85.

It will be seen that the learned trial court proceeded on the theory that in showing that there was an amount due on the notes under which the foreclosure was to be had, it was unnecessary to go into and take an account-ing as between the parties covering all the receipts and expenditures and payments on account of the indebtedness. In this we are compelled to hold that the learned trial court was in error.

The primary object of this action was for an accounting between the parties, plaintiff as debtor, the realty company as creditor, and the final action of the court in dissolving the temporary injunction and allowing the sale under the deed of trust to proceed does not pretend to state the account between the parties, even as to the notes under which the foreclosure was being had. In an accepted and accurate work, Ruling Case Law, vol. 19, p. 619, sec. 435, it is said:

"An injunction is a proper remedy where a mortgagee exercises his power of sale by attempting to sell

to satisfy an amount largely in excess of the actual debt. . . . Certainly an excessive claim by a mortgagee is ground for an injunction where it is expressly provided by statute that a foreclosure may be enjoined where the mortgagor has a legal counterclaim, or any other valid defense, against the collection of the whole or any part of the amount claimed to be due on the mortgage.''

We have no such statute in our State, although we do enforce the principle there announced. It is further said in the same section, following the above:

''It is the general rule that, to entitle him to an injunction on the ground that the mortgagee's claim is excessive, the mortgagee must have tendered the amount which he admits to be due or must offer in his bill to pay it. . . . Where there is a controversy as to the amount due under the mortgage and the accounts are complicated, the court will order an account to be taken and will prevent the mortgagee from selling until the balance due is ascertained.''

The authorities cited support the text.

A tender could not be made here, for plaintiff denied that there was anything due on the notes involved and avers ignorance of the state of his account.

In 2 Jones on Mortgages (7 Ed.), p. 733, sec. 1114, it is said:

''A mortgagee in possession, whether in person, by trustee, receiver, or by tenant, is in equity accountable for the rents and profits of the estate, and is bound to apply them in reduction of the mortgage debt. After paying the interest of the debt, any balance of receipts is applicable to reduce the principal. The mortgagee is not allowed to make a profit out of his possession of the estate. Therefore, upon a redemption of the mortgaged premises by any one interested in them, he is obliged to state an account of his receipts from the mortgaged property, and he is entitled to allowances for

all proper disbursements made by him in respect of the premises.''

As said by that text-writer, it rarely happens under our system where, as here, there is a deed of trust securing an indebtedness, that the mortgagee may be said to be in possession, but we take it that the same doctrine applies where it is proposed to sell the incumbered property under the provisions. of the deed of trust, which, as here, conveys the legal title to the trustee. That is to say, the liability of the mortgagee to account is just the same when the trustee in a deed of trust, acting under the powers of sale conferred by the deed of trust, is attempting to foreclose.

Further, in section 1115, Mr. Jones says that while at law the trustee or *cestui que trust* cannot be made to account, the mortgagor' has a right of redemption only in equity, and the right to an account is only incident to this:

''Where the grantee agrees to re-convey upon payment of the debt the grantor is entitled to recover in equity the amount of rents and profits collected, there being no adequate remedy at law.''

In an action at law the court does not go into an accounting of the rents and profits as they are received. ''But,'' says Mr. Jones in the same section, ''When the rents and profits received are sufficient to satisfy the mortgage debt and the mortgagor in a foreclosure proceeding asks for an accounting the court should strike a balance between the amount due on the mortgage and the amount chargeable to the mortgagor and give judgment accordingly.''

While the law as between mortgagor and mortgagee is not in all respects applicable to proceedings practically amounting to a foreclosure under our forms of deeds of trust, the right to an accounting in equity as between the grantor and the grantees in such a deed, is very clear.

It is true that there was a partial accounting here rendered, on which the learned trial court evidently

found that there was something due on the note under which the sale was to be had, but there is no finding of the amount due, and the court refused to enter into a consideration of the general state of the account between the parties to determine what was due.

In Hammerslough v. Kansas City Building, Loan & Savings Ass'n, 79 Mo. 80, it is said (l. c. 86):

"It is true that equity will sometimes restrain the enforcement of a security until the indebtedness it covers has been ascertained and adjudged. This has been done when the indebtedness depends upon very complicated accounts extending through a long period of time, and the necessity for an accounting is apparent or is admitted by the other side filing a bill for it."

It was held in that case that no such situation was presented there; that the items containing the disputed indebtedness are neither complicated nor numerous; that there was no doubt about the amount paid by the stockholder to the association, nor about the amount due from him monthly according to the conditions of the notes and deed of trust.

In the case at bar, however, we have a long account of debits and credits, rents collected, costs of repairs, interest charges, commissions, all to be considered and determined on, so that we have here the converse of the proposition presented in the Hammerslough Case, and the case at bar, in our judgment, presents a clear one in equity, requiring an accounting between the parties. It was error for the learned trial court to deny this and to dissolve the injunction and dismiss the bill on an exceedingly imperfect and partial account, which, even as produced at the trial, presented lump sums of charges for various matters, the credits being an arbitrary deduction from the amount of receipts made by the creditor, without advising plaintiff of the items in such a way as to enable him to challenge their correctness.

That the plaintiff was clearly entitled to an accounting and was entitled to know exactly how much

was in fact due on the whole indebtedness is clear; for by the terms of the deed of trust here, when default occurred in the payment of any one of the notes, all of the notes matured, and that required an accounting of the whole indebtedness between the parties, and that was what the learned trial court refused to go into.

There was testimony in this case tending to show that the holder of the notes had never made out a statement for plaintiff of his account and when the bookkeeper of the defendant Realty Company was asked why that had not been done, his answer was, that plaintiff had never asked him for an accounting, nor had he even seen any agent or representative of plaintiff in regard to it. The deed of trust in this case provided for the release of one or more of the houses covered by it when a payment was made of a certain amount. The notice of the sale covers all of the property without exception, and it was in evidence that the defendant Realty Company had never released any of these houses for the reason, as the witness stated, the plaintiff had never asked it to do so. The statement upon which the court apparently proceeded in arriving at its conclusion was made out for the attorney for defendants and presented by him to plaintiff or his representative, either directly before or after the proceeding for foreclosure was instituted, either a week or a month before. In that the amounts credited or charged are generally in gross sums. According to it the total amount due under the deed of trust, with interest, was $14,889.96. No statement was made out, charging plaintiff with the notes as they became due, the balance of the notes being added. This was the testimony of the bookkeeper. In this statement referred to, there was a large charge for interest, which is disputed. There was a credit for net rents collected, deducting charges for improvements, etc., but no statement of the cost or nature of the improvements. In short, even at the trial of the case, as far as it proceeded, there was no account stated as between the parties, yet an accounting was the very

gist of this action, the injunction of the sale merely incident to that. The final judgment in the case was merely that the temporary injunction be dissolved and the bill be dismissed. As before said, this gave plaintiff no statement whatever of any amount which would be necessary for him to pay to stop a foreclosure; in brief, no account between the parties was taken.

It follows that the judgment of the circuit court cannot be sustained. It is reversed and the cause remanded for further proceedings as herein indicated.

*Allen* and *Becker, JJ.,* concur.