[Civ. No. 5316. First Appellate District, Division One.—April 25, 1927.]

## D. G. WHITING, Respondent, v. J. G. DELOZIER et al., Appellants; WILLIAM E. McDONALD et al., Interveners.

[1] AGENCY — BROKERS — EXCHANGE OF PROPERTY — EVIDENCE — FINDINGS.—In this action against real estate brokers for an accounting in connection with an exchange of properties, their testimony together with the written agreement with plaintiff and the offer of the owner of an apartment house to accept plaintiff's property in exchange was sufficient to support the findings of the trial court that they were plaintiff's agents to negotiate the exchange of bank stock for the apartment house and represented that it could not be procured for less than 141 shares, which plaintiff placed in escrow subject to their order, but acquired it for 100 shares and retained the rest without plaintiff's knowledge and consent.

[2] ID.—SECRET PROFITS—ACCOUNTING.—In such action, where defendants withdrew from escrow 41 of the 141 shares of bank stock, which had been placed subject to their order by plaintiff, to be exchanged for an apartment house, and after completing the exchange for 100 shares, without disclosing the proposition of either party to the other, they must account to plaintiff.

[3] ID.—ADVANTAGE OBTAINED IN EFFECTING EXCHANGE—DUTY TO REPORT.—In such action, where the brokers had no option to purchase the shares of bank stock placed in escrow subject to their order to be exchanged for an apartment house, it was their duty to report to their principal any more advantageous terms of sale obtained by them than that required by their instructions.

[4] ID.—BREACH OF TRUST—SECRET PROFITS—DAMAGES.—In an action against an agent for breach of trust and to recover secret profits obtained as a result of the agency, the principal may recover from the agent the difference between the price of the land purchased by him for the principal and the amount paid him by the principal.

[5] APPEAL — INTERVENTION — OBJECTION TO RIGHT TO INTERVENE. — Where no judgment was entered on the complaint of interveners against defendants, and the interveners did not appeal from the

---

2. See 1 Cal. Jur. 794; 4 Cal. Jur. 569; 21 R. C. L. 826.
3. See 4 Cal. Jur. 569.
4. See 4 Cal. Jur. 570.

judgment for plaintiff, objections against the right to intervene raise simply moot questions which will not be considered on an appeal by defendants.

(1) 9 C. J., p. 553, n. 81.    (2) 9 C. J., p. 538, n. 38.    (3) 9 C. J., p. 536, n. 27, p. 537, n. 33.    (5) 4 C. J., p. 649, n. 35.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. A. Lane and Edw. F. Crawford for Appellants.

James S. Bennett for Respondent.

W. H. Evans and E. R. Baskerville for Interveners.

CAMPBELL, J., *pro tem.*—This is an appeal by appellants from a judgment entered in favor of respondent and against appellants and interveners. The interveners have not appealed.

On August 1, 1919, the appellants Delozier and Colvin, being real estate brokers located in Los Angeles, but formerly located in Imperial Valley, where they had known and had business dealings with respondent, received a letter from one Francisco inviting them to come to San Diego, saying, "I have a real big trading proposition for you." This Francisco was a real estate dealer in San Diego and was either an agent for or jointly interested with the interveners McDonald and Evans. He introduced appellants to the interveners and proposed that appellants make some kind of a trade with the interveners for a large partially constructed apartment house in San Diego known as the Winchell Apartments. The interveners had, according to the evidence, acquired this apartment house for practically nothing; the former owner had died after expending considerable money upon the building; there were a number of judgments against the building and the interveners had bought it at the sale; they had promised to protect these judgment creditors, but had not done so; it did not cost them very much money and they said they could offer a big deal to turn it quick.

The interveners were brothers-in-law. McDonald was a real estate agent who had acted in many deals as such, but who handled practically his own properties and occasionally employed other brokers. Evans was an undisclosed partner or co-owner with his brother-in-law and a practicing attorney. At the trial they testified first that they two were sole and equal owners and solely interested except for the lien or mortgage holder in the amount of $16,600, but later admitted that Francisco had bought the property for them and owned a one-fourth interest in the net profits they should make.

Prior to the transaction here in question the appellants had acted as agents for the respondent in exchanging an apartment house in Los Angeles for 251 shares of the capital stock of the First National Bank of San Jacinto, and respondent had complained to appellants that they had misrepresented the facts to him, and it was to adjust this complaint that appellants agreed to act as respondent's agents in exchanging the bank stock for the San Diego apartment house. According to the testimony of respondent appellants told him that they would get him a trade for the bank stock that would enable him to recover the loss and more and would ask him no commission. Appellant Delozier prepared a written contract by which respondent employed appellants to make the exchange. Appellant Delozier testified: "I wrote up the agreement there at the desk at the Maryland Hotel; then I just drew a line through the commission part; then he went to sign it and he said, 'You haven't got net in here,' and I had to write that in before he signed it, and I think, by looking on the agreement which you have here in your files, that you will see it is a little different colored ink, as Mr. Colvin handed me his fountain pen then."

The agreement itself provides: "This agreement witnesseth: That I, D. G. Whiting, of El Centro, Cal., the owner of the following described first piece of property, situate, lying and being in the city of . . . , county of . . . , state of . . . , particularly described as follows, to wit: 141 shares of bank stock of the First National and the Savings Bank of San Jacinto, Cal., which I agree to exchange for the following described second piece of property, situated, lying and being in the city of San Diego, county of San Diego,

state of California, particularly described as follows, to-wit: One apartment house known as the Winchell Apts., located on lots 5, 6, 7 and 8, in block 239 of University Heights in the city of San Diego.

"It is further agreed and understood that all principals to this agreement have investigated the respective properties and this exchange is being made on representations of the owners only and the agent is hereby released from all liability regarding the same.

"And J. G. Delozier & B. E. Colvin is hereby authorized to act as my agent in negotiating said exchange.

"And it is further agreed with said J. G. Delozier & B. E. Colvin that when he has secured an acceptance of the proposition to exchange the above described properties on the above terms, or such other terms which may hereafter be accepted by me, I will then pay the sum of nothing dollars, making it a net proposition, as commission for such services."

With this authority from the respondent Whiting the appellants went to the owner of the apartment house and received from him a proposition addressed to the respondent Whiting, as follows: "I, William E. McDonald, hereby make the following proposition to D. G. Whiting, for a transfer of all my right, title and interest in and to the following described property situated in the county of San Diego, city of San Diego, state of California: Lot 5 to 8, inclusive, in block 239 of University Heights, improved with a 4-story building known as the Winchell Apartments, the said property being free of all encumbrances, with the exception of a mortgage in the sum of $16,600, and state and county taxes for the year 1920. The consideration for said transfer to be 100 shares of the capital stock of the First National Bank of San Jacinto, Cal."

When the construction of the contract was put squarely to the defendant Delozier, he testified:

"The Court: I want to know how you considered yourself operating at that time, as to whether you were agent for either of these parties, or whether you were a free lance making what you could in this deal.

"A. In this case I suppose it would be agent for Mr. Whiting, a net proposition. In other words, it would be about the same as an option."

Mr. Lane, attorney for the defendants, cleared the matter up for the trial judge when he said:

"Mr. Lane: Mr. Delozier's evidence has scarcely died from our ears, his testimony that in this document that they charged a commission, but after he had seen Mr. Whiting they came back and told Mr. McDonald and Mr. Evans that the deal would be made on a net proposition, and no commission. Now, there is one ground upon which that instrument may be material. I want to call your Honor's attention to that. The preliminary instrument shows they did contemplate acting as agent for Mr. McDonald in this matter, and it so recites, but the later instrument, which is the final agreement between the parties, recites just exactly the opposite, namely, that Mr. Delozier and Mr. Colvin were to be the agent of Whiting."

The offer of the interveners to transfer the apartment house to respondent for 100 shares of stock was admittedly concealed from respondent by appellants.

[1] The written agreement for exchange, the written offer of the interveners and the testimony of appellant Delozier recognize that appellants were the agents of respondent, as also does the testimony of respondent establish such fact, and amply support the findings of the trial court:

"That within two years prior to filing his complaint herein, and on or about the 1st day of August, 1919, plaintiff being then the owner of two hundred and fifty-one (251) shares of the capital stock of the First National Bank of San Jacinto, employed the defendants as his agents to negotiate for the purchase of an apartment house in the city of San Diego, then owned by interveners, to be paid for with shares out of said shares of the capital stock of said First National Bank of San Jacinto so owned by plaintiff.

"That defendants, and each of them, represented to plaintiff that said apartment house could not be procured for plaintiff for less than one hundred and forty-one (141) shares of said capital stock, and plaintiff, relying upon said representations of defendants, as his agents aforesaid, placed one hundred and forty-one (141) shares of said capital stock and the certificates representing the same, all properly endorsed ready for transfer on the books of said corporation, subject to the order of the said defendants.

"That on or about October 1st, 1919, defendants acquired said apartment house for plaintiff for and in consideration of one hundred (100) of said shares of the capital stock of said First National Bank of San Jacinto, and without the knowledge or consent of plaintiff said defendants took, retained and converted to their own use the remaining forty-one (41) shares of the capital stock of said First National Bank of San Jacinto so owned by plaintiff and so placed subject to the order of defendants. That defendants so conducted said negotiations as to hinder and prevent plaintiff and interveners consulting together during said negotiations.

"That plaintiff did not at any time consent that defendants might purchase his said one hundred and forty-one (141) shares of the capital stock of said bank in consideration of their acquiring for him the said apartment house."

[2] As has been said, the evidence supports the findings. The evidence shows that with an offer from the plaintiff to give 141 shares of bank stock for the apartment house and an offer from McDonald to take 100 shares of the bank stock for the apartment house, and with the principals separated from each other, with neither proposition disclosed to the person to whom the offer was made, the appellants opened the escrow at El Centro and obtained respondent's instruction, placing the 141 shares subject to the order of the appellant Delozier. The exchange being completed between the principals, Delozier withdrew the 41 shares, for which he receipted. If appellants were respondent's agents, then they must account. (*Calmon* v. *Sarraille*, 142 Cal. 638 [76 Pac. 486]; *Great Western Gold Co.* v. *Chambers*, 153 Cal. 308 [95 Pac. 151]; Id., 155 Cal. 366 [101 Pac. 6].)

The case of *Robinson* v. *Easton*, 93 Cal. 80 [27 Am. St. Rep. 167, 28 Pac. 796], on which counsel for appellants rely, has been sufficiently explained in the case of *Smith* v. *Blodgett*, 187 Cal. 235, 240 [201 Pac. 584], as follows: "The written instrument in the case at bar contains no express provision that plaintiffs shall retain that portion of the purchase price which exceeds the specified selling price. . . . It may mean that all net proceeds above the specified price belong to him, the owners of the property agreeing to part with all interest in the property, whatever the price may be, provided they receive the sum of one hundred dol-

lars per acre free from all deductions, in which case Smith would be in the position of a vendor selling on his own account; it may mean that the owners of the property are entitled to receive all of the net proceeds of the sale and that Smith cannot look to them for any compensation for services unless he obtains for them a net price in excess of one hundred dollars per acre, and in that case he would be a mere agent. (*Ford* v. *Brown,* 120 Cal. 551 [52 Pac. 817]; *Wolverton* v. *Tuttle,* 51 Or. 501 [94 Pac. 961, 963].)''

[3] The evidence introduced to clear up the ambiguity clearly shows that the offer of the respondent was to the interveners, and that the offer of the interveners was to the respondent. The appellants had no option to purchase either from the respondent or from the interveners. The reason respondent was to pay no commission to appellants is clearly explained. The testimony of all parties was to the effect that the appellants were acting as the agents of the respondent, and counsel for the appellants so represented to the trial court in presenting an objection to the introduction of testimony. On this evidence the trial court solved the ambiguity by a specific finding that respondent did not at any time consent that defendants might purchase his shares of bank stock. Under such circumstances it is the duty of the agent to report to his principal any more advantageous terms of sale he can obtain than that required by his instructions.

Plaintiff placed 141 shares of bank stock subject to the order of appellants with which to purchase the apartment house from interveners. They used but 100 shares in making the purchase. The judgment requires them to account to respondent for the remaining 41 shares which he had placed subject to their order for a specific purpose.

"An agent will not be permitted to justify the violation of his trust and retain from his principal the fruits of his fraud upon the plea that the principal was willing to give a greater price for the property rather than not to obtain it." (*Calmon* v. *Sarraille,* 142 Cal. 642 [76 Pac. 486].)

[4] In an action against an agent for breach of trust and to recover a secret profit obtained by such agent as the result of the agency relationship, the principal should have from the agent the difference between the price of the land purchased by him for the principal and the amount paid

him by the principal. (*Langford* v. *Thomas*, 200 Cal. 192 [252 Pac. 602]; *King* v. *Wise*, 43 Cal. 628, 634.)

[5] Appellants urge a number of points, all of which have to do with the insufficiency of the evidence to support the findings and to errors in rulings on the right of the interveners to intervene. We have disposed of the question of the insufficiency of the evidence to support the findings, and while we are of the opinion that the rulings of the trial court on the objections raised against the interveners' right to intervene are correct, it is not necessary to distinguish the authorities cited, as the judgment is in favor of respondent and against both appellants and interveners. No judgment having been entered on the interveners' complaint against appellants and the interveners not having appealed, these objections raise simply moot questions.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 23, 1927.