BARNSDALL OIL CO. et al. v. WILLIS et al.

No. 128 Civil.

District Court, E. D. Texas, Texarkana Division.

June 23, 1948.

**294**

Richard L. Arnold, of Texarkana, Ark., and Foster V. Phipps, of Tulsa, Okl. for plaintiff.

Elmer L. Lincoln and J. I. Wheeler, both of Texarkana, Tex., and Frank S. Quinn and Herbert M. Barney, both of Texarkana, Ark., for defendant.

DAWKINS, District Judge.

The retrial of this case has not served to change the statement of facts by the Court of Appeals Fifth Circuit found on page 825 to the end of the first paragraph of page 826 of 152 Federal Reporter, second series. In the second opinion by that Court on application for rehearing, 153 F. 2d 784, it was said: "Regardless of what may have been said in the opinion reversing and remanding this cause for a new trial as to what the facts were or what the evidence tended to show, it is the purpose of this Court to leave the lower Court free in finding the facts on a new trial as to whether or not Willis obtained confidential information by virtue of his relation as a lease broker for the Plaintiffs, or either of them, and whether or not he took advantage of such confidential information, if any was so obtained, and used it to his own advantage and to the detriment of the Plaintiffs."

It is believed unnecessary to attempt to state at length the nature of this case, issues, etc., as they are fully set forth in the opinions of the Court of Appeals. Accordingly, it is the finding of this Court that when Wadley employed Willis early in 1943 to obtain certain leases in the Eylau area, the latter was informed by the former that a block was being assembled for the purpose of transferring it to Barnsdall Oil Co., who, in turn, if certain geophysical explorations, then being carried on, were successful, a well or wells would be drilled in the hope of discovering oil, gas or other minerals. Wadley had himself previously prepared a map showing leases already acquired, names of owners, acreage, etc., and also those tracts upon which leases were desired to complete the block. This map was shown to Willis and he was engaged to purchase certain leases to fill in that block in certain areas. The map in general outline revealed the boundaries with respect to the compass. In the approximate center there was a 91 acre tract belonging to Louis Heilbron, which is involved here.

Wadley believed this tract was under lease to the Texas Company and so advised Willis. On the other hand, Willis knew he had obtained a lease upon it for Phillips Petroleum Co. some time before, which fact he did not reveal to Wadley.

After Barnsdall had completed its geophysical explorations, its geologist, a Mr. Valerius, also prepared a map pursuant to this confidential information, the contents of which were made known to Wadley, who in turn conveyed the substance of it to Willis, with the statement that Barnsdall intended to drill a well. This information confirmed, in large measure, the reports of geologists whom Wadley had previously employed to cover the same area, and which also showed the center of the block both in area and geologically as approximately the Heilbron property. Shortly after Barnsdall had completed its survey and determined to drill, Willis, with the information obtained from Wadley, and from access to the latter's office, went to Shreveport on July 20th, 1943, where he inquired and was informed that Phillips Petroleum Co. had released the Heilbron property. On the next day, July 21st, he obtained a lease thereon in the name of his brother-in-law, A. T. Brown, under the circumstances detailed in the original opinion by the Court of Appeals found in the 5 Cir., 152 F.2d 824.

■ Persons undertaking to do what Wadley and Barnsdall did in this case find it necessary to employ agents, either regular employees or others, such as defendant, to obtain leases. In doing so they have to divulge to such agents the location of the properties desired, usually according to maps or plats, which even to a layman disclose the areas in general outline, in which the employers are interested. Of course,

when these leases are recorded the alert "lease-hound", who watches such records, can make his own map therefrom and when the block is fairly complete, determine the boundaries in which drilling may be undertaken, especially if the leases are taken in the name of one of the big companies or its operating subsidiaries. However, when the leases are taken in the name of an individual, who customarily does not drill, or does not engage in such operations, these scouts are left to speculate or guess as to what will happen. The purpose of the lessee may be to assemble and transfer only portions of the lease to operating companies, which, of course, could not be known until such transfers are executed and then only when they are recorded, which may be just before drilling is commenced. In such a situation so long as one dealing, as Willis did with Wadley in this case, possesses no better information than is revealed by the records, his employment to obtain the leases here and there would not prevent him from taking a chance by obtaining for himself in his own name a lease or leases on tracts which he had not been employed to purchase for his principal, in the hope that he might hit it right.

■ However, in this case, the evidence it is believed, preponderates substantially in support of the contention that Willis had, in his contacts with Wadley, learned the facts above stated, as to the purpose of Wadley and Barnsdall as well as the latter's intention to drill. This conclusion is strongly supported by the fact that when Willis's testimony was taken after this suit was filed, he turned up with a map containing the confidential information which Valerius had gotten for his company by geophysical explorations at a cost to it of several thousand dollars. It is further confirmed by witnesses, without interest in this litigation, who testified that Willis informed them Barnsdall Oil Co. was going to drill upon the block of acreage which was being assembled. On August 12, 1943, Willis accepted employment to purchase the Heilbron lease and went through the maneuvers described in the opinion of the Court of Appeals, which resulted in his extracting from the plaintiffs $7500 in cash, plus a commission of $500 for making the deal

with himself. When accepting this employment he knew he had already taken a lease on the Heilbron tract in the name of his brother-in-law, and because of the anxiety displayed by Valerius to obtain this lease Willis had every reason to believe the first well would be drilled thereon, as was done.

Under the facts and circumstances thus revealed it is the conclusion of this court that defendant Willis did take advantage of confidential information, which he would not have received but for his employment by Wadley with respect to other leases and the access this gave him to the office and records of Wadley. This information he used for his own advantage and enrichment to the prejudice and loss of both Wadley and Barnsdall.

■ Having found these facts, under the authorities cited by the Court of Appeals, the plaintiffs are entitled to recover all that Willis received from the Heilbron lease less the sum of $291.00, which he actually paid when taking it in the name of his brother-in-law, Brown.

Proper decree should be presented.