**Albert J. GROH and Bessie M. Groh, Plaintiffs-Respondents,**

**v.**

**Oscar SHELTON, Ethel Shelton and Geo. F. Addison, Trustee, Defendants-Appellants.**

**No. 8709.**

Springfield Court of Appeals.

Missouri.

May 20, 1968.

William E. Seay, Salem, for defendants-appellants.

Dorman L. Steelman, Salem, for plaintiffs-respondents.

STONE, Judge.

In this equitable action, plaintiffs Albert J. Groh and Bessie M. Groh, husband and wife, sought to enjoin foreclosure under a certain deed of trust executed by plaintiffs on April 24, 1965, covering and conveying an 80-acre tract in Dent County, Missouri, to defendant George F. Addison as trustee, to secure payment of a promissory note of even date therewith in the principal sum of $1,500 to defendants Oscar Shelton and Ethel Shelton, husband and wife, or their order. At the conclusion of the trial, the temporary injunction was made permanent and defendants were perpetually enjoined from foreclosure. They appeal.

■ Plaintiffs, who resided in St. Louis, were desirous of purchasing "a place" (a farm property) in Dent County; and looking toward that end, they asked defendant Oscar Shelton "to find a place" for them. Defendant Oscar, a resident of Dent County and a "second or third" cousin of plaintiff Bessie M. Groh, was (so he said) a farm property) in Dent County; and, look-estate. We assume that he did "not advertise or hold himself out to the public as a real estate broker or dealer" and only "occasionally" engaged in real estate transactions [V.A.M.S. § 339.010(3)], since ad-mittedly neither defendant Oscar nor defendant Ethel was licensed under V.A.M.S. Chapter 339, "Real Estate Agents and Brokers," and we should not presume that either was guilty of intentional wrongdoing. State ex rel. Kugler v. Tillatson, Mo. (banc), 312 S.W.2d 753, 757(7); Sebastian County Coal & Mining Co. v. Mayer, 310 Mo. 104, 111–112, 274 S.W. 770, 772(2); State ex rel. Douglas v. Reynolds, 276 Mo.(banc) 688, 694, 209 S.W. 100, 101 (1).

In any event, defendant Oscar undertook to locate a farm property acceptable to plaintiffs, they "dropped in to see him about three or four times," and on one occasion (so plaintiff Bessie testified) they drove out and looked at a place but "didn't like it." Another place was located in which plaintiffs were interested. However, defendant Oscar reported he "couldn't get" that place, but at the same time he emphatically recommended the 80-acre tract subsequently purchased by plaintiffs and described in the deed of trust here involved, as evidenced by the following handwritten letter addressed by defendant Oscar to plaintiff Bessie under date of Thursday, April 15, 1965, which (omitting caption and signature) read as follows: "Dear Bessie I couldn't get the place that you wanted or I mean the one we talked about at or near Gladden. Bessie I found a place of 80 acres in ¼ mile of 19 highway. Bessie it can be bought for $3,500.00. It has a five room house water in the house and practly (sic) all fenced and Bessie there is over or between $1,000.00 and $1500.00 of saw mill timber on it that will cash right now. Now I must know Saturday sure. There is some terms on this. You see me a Saturday morning early."

In response to this summons, plaintiffs saw defendant Oscar on Saturday, April 17, 1965, and "he took them and showed them" the 80-acre tract (hereinafter referred to as the Counts farm), which he had recommended in the above letter. When plaintiffs manifested interest, discussion of the purchase price and terms of

payment ensued. Plaintiff Bessie's account of that conversation was: "Oscar said we had to have $3,500 cash. I told him . . . 'Oscar, we haven't got $3,500.' He up and agreed to loan me $1,000 right away, and I said, 'All I could get is $2,000 cash . . . I will have to borrow another $500.' He said, 'I will have to talk to [defendant] Ethel about the other $500'. . . . He talked to Ethel and he promised to loan us the $1,500 on the place." Defendant Oscar's testimonial version of the same conversation was: "I asked them $3,500 for it and they never refused a word. They just bought it but Bessie or both of them said, 'We ain't got but $2,000 to pay down on this.' And I said, 'That is all right. Give me 8% interest and pay me $100 a month until you pay $500 then I will carry the $1,000 for a year or so.' "

The owners of the Counts farm were Mr. and Mrs. Virgil Counts, who resided in Iowa. Upon trial, defendant Oscar stated that, shortly prior to Saturday, April 17, he had learned from Virgil's father, Bert Counts, an elderly gentleman "around 80 years old" who lived in Dent County, Missouri, that the son wanted to sell his farm, and that "he [Bert] asked me $2,500 . . . he told me that was what Virgil wanted for the place." "I [defendant Oscar] told him I would take it. I said, 'As soon as you get the abstract and deed I will pay you in cash, $2,500 cash.' " That only $2,500 would be paid to the Counts was not disclosed to plaintiffs on Saturday, April 17 (or for that matter at any time prior to conveyance of the Counts farm to them); but, as defendant Oscar conceded upon cross-examination, "I just told them [plaintiffs] it would take $3,500 to buy it and they said, 'Go buy it.' "

After plaintiffs had dinner at the home of defendants Shelton on April 17, defendant Oscar "got to studying." "Bert [Counts] might be mistaken, maybe he couldn't sell that place. I said, ' . . . we will have Ethel, my wife, write the contracts.' She wrote the con-

tracts. I said, 'We will have Bert to sign them.' " The handwritten "contract" dated April 17, 1965, and on that day signed by Bert Counts, defendant Oscar and both plaintiffs, read as follows:

"This agreement made and entered into between Bert Counts first party and A. J. Groh and Bessie Groh his wife second party. In which A. J. Groh and Bessie Groh agrees to purchase farm of 80 acres near Gladden, Mo. from Bert Counts and Oscar Shelton

"In which Bert Counts is to accept a payment of $1,000.00 as earnest money on the price of the farm in which a balance of $2500.00 is due when deed and abstract is made."

When defendants' counsel pointed out that defendant Oscar was mentioned in the "contract" and also signed it, plaintiff Bessie explained "they told me we were buying the place from Virgil Counts, his [Bert's] son . . . . They said Oscar was helping us buy it. We didn't buy it from him, we bought it from Virgil Counts and his wife." Both plaintiffs insisted that, while they were riding with defendants Shelton, Oscar "said Bert and Virgil Counts was going to give him $100 for selling the place to us [plaintiffs]," and that there was no "understanding" about payment of compensation by plaintiffs to defendants Shelton. As plaintiff Bessie put it, "I wasn't supposed to pay him [defendant Oscar] anything." Upon trial, there was no assertion by defendants Shelton that they were to have been compensated by plaintiffs, but the Sheltons denied that Oscar had said he was to receive $100 from the Counts.

On Saturday, April 24, 1965, plaintiffs, defendants, Bert Counts and Mr. and Mrs. Virgil Counts met in the law office of defendant Addison in Salem, the county seat of Dent County, for consummation of the sale to plaintiffs. After preparation of the instruments by Mrs. Addison, the Counts farm was conveyed directly to plaintiffs by

deed executed by Mr. and Mrs. Virgil Counts, and plaintiffs executed (a) their negotiable promissory note payable to the order of defendants Shelton in the principal sum of $1,500, of which $500 was to be paid in five monthly installments of $100 each and the remaining $1,000 was to be paid one year after date, with interest from date at the rate of 8% per annum, and (b) their deed of trust covering and conveying the Counts farm to defendant Addison as trustee to secure payment of the aforesaid note. Plaintiffs paid $2,000 directly to Mr. and Mrs. Virgil Counts, and defendant Ethel handed them a check for an amount shortly disclosed to plaintiffs, by happenstance, as having been $500. This was revealed when, after defendant Oscar and Bert Counts had stepped out of Addison's crowded office, Mrs. Addison inquired how many documentary stamps should be affixed to the deed conveying the Counts farm to plaintiffs and Virgil Counts replied "$2,500, that is what I am getting." By that innocent interchange, plaintiffs first learned that the owners of the Counts farm actually were to receive only $2,500. Plaintiffs' note and deed of trust already had been executed and delivered.

The immediate reaction of plaintiff Bessie was (in her words) that "I was so mad I couldn't hardly even stand to talk to them [defendants Shelton]." After she returned to St. Louis she consulted an attorney there and, within a month or so, plaintiffs employed their present counsel at Salem. Pursuant to his advice, plaintiffs thereafter paid to defendants Shelton $500 on the principal sum of the $1,500 note, together with interest on that $500 and a $25 collection fee to attorney Addison. When plaintiffs refused to pay the remaining $1,000 of that principal sum and interest thereon, the Counts farm was advertised for sale under the deed of trust, and this suit to enjoin foreclosure followed.

■ Defendants' brief tenders five points, all of them meaningless assignments couched in condemned generalities, such as "I. The trial court erred because upon the law and the evidence, the judgment and decree of the court should have been for the defendants." Other assignments complain that the judgment was "against the evidence and greater weight of credible evidence" and "against the law" and that the trial court erred "because on the face of the pleadings, neither plaintiff, nor either of them, were entitled to affirmative relief" and "because on the face of the record, including the pleadings . . . neither plaintiff . . . was entitled to affirmative relief." None of these points preserves and presents anything for appellate review. V.A.M.R. Rule 83.05, subsecs. (a) (3) and (e); Schoene v. Hickam, Mo., 397 S.W.2d 596, 599(2); Hoover v. Whisner, Mo.App., 373 S.W.2d 176, 178(1, 2), and cases there cited. We have no duty to seine through the entire brief in an effort to ascertain the points on which an appellant depends. Sides v. Contemporary Homes, Mo.App., 311 S.W.2d 117, 122; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481, 483(2). But being mindful that "our primary duty is to litigants rather than to counsel who represent them" [Ambrose v. M.F.A. Co-operative Ass'n. of St. Elizabeth, Mo., 266 S.W.2d 647, 650; Songer v. Brittain, Mo.App., 272 S.W.2d 16, 18], we have, in the exercise of our discretion, decided to determine whether the judgment nisi was justified upon the record. Frisch v. Schergens, Mo., 295 S.W.2d 84, 85(1); Hoover, supra, 373 S.W.2d at 179.

The essence of defendant Oscar's theory of the case has been and is that he had the right to purchase the Counts farm for $2,500 and in turn resell it to plaintiffs for $3,500, and that this was what actually occurred with the parties simply bypassing for the sake of convenience the intermediate transfer of record title through him. In this, defendant Oscar conveniently ignores the nature of his relationship with plaintiffs and the obligations and limitations imposed thereby. He was not a stranger dealing at arm's length with plain-

**916**

tiffs, but he was a "second or third" cousin who had been asked by plaintiffs "to find a place" for them and who, in the course of his undertaking to do so, had shown them the Counts farm.

The relation of principal and agent is created by "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [1] Neither a contract between the principal and the agent [Utlaut v. Glick Real Estate Co., Mo., 246 S.W.2d 760, 763; 3 Am.Jur.2d Agency § 18, p. 428] nor an express appointment and acceptance [Wallo v. Rosenberg, Mo.App., 331 S.W.2d 8, 13(4)] is necessary, but consent may be manifested and the relation may be created by words and conduct. [2] Payment of, or an agreement to pay, compensation to the agent is not an essential to creation or existence of the relation, and agency may be a wholly gratuitous undertaking. [3] And, although "[t]he parties may not have intended to create the legal relationship or to have subjected themselves to the liabilities which the law imposes as a result of it, nevertheless, the relationship exists 'if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act.' " [4] We have no doubt but that the facts in the instant case, when considered in the light of the stated principles, permitted and justified a finding that the relationship between plaintiffs and defendant Oscar was that of principals and agent.

That was a fiduciary relationship [Restatement Agency 2d, § 13, p. 58; Dittmeier v. Missouri Real Estate Com'n, Mo.App., 237 S.W.2d 201, 206(7), certiorari denied 358 U.S. 941, 79 S.Ct. 347, 3 L.Ed. 2d 348], one of trust and confidence [Emily v. Bayne, Mo.App., 371 S.W.2d 663, 670; Martin v. Hieken, Mo.App., 340 S.W.2d 161, 165(4)], under which defendant Oscar was obligated to be perfectly frank with plaintiffs, to make full disclosure of all material facts, to strictly avoid misrepresentation [Dittmeier, supra 237 S.W.2d at 206(7); Acy v. Inland Security Co., Mo. App., 287 S.W.2d 347, 351(5)], and in all respects to act with the utmost good faith, fidelity and loyalty in the interest of plaintiffs, his principals. King v. Pruitt, 365 Mo. (banc) 823, 826, 288 S.W.2d 923, 925 (3); Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18, 24. In short, " '[t]he paramount and vital principle of all agencies is good faith, for, without it the relation of principal and agent could not well exist. So sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed.' " Van Raalte v. Epstein, 202 Mo. 173, 191, 99 S.W. 1077, 1081; Acy, supra, 287 S.W.2d at 351(6).

Having voluntarily undertaken "to find a place" for plaintiffs, defendant Oscar had no right to purchase the Counts farm for $2,500 and then resell it to plaintiffs for $3,500. On the contrary, that was prohibited by the long-settled and universally-recognized "doctrine of the law that

1. Restatement Agency 2d, § 1, p. 7; Utlaut v. Glick Real Estate Co., Mo., 246 S.W. 2d 760, 763(3); E. B. Jones Motor Co. v. Pullen, Mo.App., 298 S.W.2d 448, 452.

2. Wallo v. Rosenberg, Mo.App., 331 S.W.2d 8, 13(4); Hawkins v. Laughlin, Mo.App., 236 S.W.2d 375, 380(3); Restatement Agency 2d, § 26, Comment c, l. c. 102; 2 C.J.S. Agency § 23a, p. 1045; 3 Am.Jur.2d Agency § 18, l. c. 429.

3. Leidy v. Taliaferro, Mo., 260 S.W.2d 504, 507(5); Restatement Agency 2d,

§ 16, p. 85; Id., § 225, p. 497; 3 Am. Jur.2d Agency § 2, l. c. 420; Id., § 18, p. 428; 2 Williston on Contracts (3d Ed.), § 274, l. c. 185–186.

4. Leidy, supra note 3, 260 S.W.2d at 505 (2); Roy v. Tinsley, Mo.App., 355 S.W.2d 621, 624. See Restatement Agency 2d, § 1, Comment b, l. c. 8; 2 C.J.S. Agency § 17, l. c. 1042. Consult also Larner-Diener Realty Co. v. Fredman, Mo., 266 S.W.2d 689, 690(1).

forbids an agent to *buy from or sell to himself*" without his principal's full knowledge and consent, regardless of whether or not such transaction results in actual injury to such principal, "for the moral stamina of the average man is inadequate to preserving a fine glow of fidelity to his trust and confidential relation in such transaction, and the interdiction is enforced with a strong hand in courts of justice." (Emphasis ours) Meek v. Hurst, 223 Mo. 688, 698–699, 122 S.W. 1022, 1024; Curotto v. Hammack, 362 Mo. 457, 462, 241 S.W.2d 897, 899, 26 A.L.R.2d 1302; Holt v. Joseph F. Dickmann Real Estate Co., Mo.App., 140 S.W.2d 59, 63(3).

In this jurisdiction, our courts have had occasion to apply the above doctrine more frequently in cases involving an agent *selling* property for his principal.[5] However, logic and common sense dictate, and the doctrine as stated in our cases recognizes, that it should apply with equal strictness to an agent, such as defendant Oscar, *purchasing* for his principal [Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231, 233–234(4)]; and in numerous instances the courts in other states have enforced this doctrine by requiring *purchasing* agents to disgorge secret profits.[6] The situation under consideration falls squarely within the pronouncement in Restatement Agency 2d, § 1, Comment c, p. 10, that "where one asks another to purchase property for him which the other gratuitously promises to do, the other immediately has a power to bind the first by the purchase of the property and immediately becomes subject to a fiduciary duty not to buy it on his own account." And if the agent breaches that duty and buys on his own account, he holds the property as a constructive trustee for his principal.[7]

We have not overlooked the fact, upon which defendants lean heavily, that plaintiffs believed the Counts farm to have been worth $3,500 and were willing to pay that sum for it. However, this constitutes no defense to plaintiffs' action, for an agent will not be permitted to justify the violation of his trust and retain from his principal the fruits of his fraud upon a plea that the principal was willing to pay more than the seller asked for the property.[8] Defendant Ethel with actual knowledge of the true facts actively participated in the entire scheme by which she and defendant Oscar undertook to reap a profit of $1,000 at plaintiffs' expense, and she stands in a court of equity with hands as begrimed as those of her husband. On their own testimony, defendants Shelton are not entitled

5. E.g., Frager v. Glick, Mo., 347 S.W.2d 385, 389–390(3, 4); Larner-Diener Realty Co., supra note 4, 266 S.W.2d at 690(2); Utlaut, supra note 1, 246 S.W.2d at 763 (4–6); Holt v. Joseph F. Dickmann Real Estate Co., Mo.App., 140 S.W.2d 59, 63–64(3–6).

6. Bachrach v. Fleming, 269 Pa. 350, 112 A. 445; Steiner v. Rowley, 35 Cal.2d 713, 221 P.2d 9, 11(3, 4); Thompson v. Stoakes, 46 Cal.App.2d 285, 115 P.2d 830, 832–833(2–4); Whiting v. Delozier, 82 Cal.App. 525, 255 P. 861, 863(2), 864(5); Tucker v. Lacey, 160 Fla. 564, 35 So.2d 724; Stephenson v. Golden, 279 Mich. 710, 276 N.W. 849, 858–859 (18, 19); Volz v. William D. Burkheimer, Inc., 173 Wash. 49, 21 P.2d 285; Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231, 233(3). See Store of Happiness v. Carmona & Allen, 152 Cal.App.2d 266, 312 P.2d 1104, 1108–1109(6, 7); Barnsdall Oil Co. v. Willis, D.C.Tex., 78 F.Supp. 293(3), certiorari denied 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519; 12 C.J.S. Brokers § 42, l. c. 101–102.

7. Bachrach, supra note 6, 112 A. at 446; Casari v. Victoria Amusement Enterprises, 327 Pa. 382, 194 A. 503, 506 (6–9); Stephenson, supra note 6, 276 N.W. at 858–861 (18–24); Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 423(8), 54 A.L.R. 1173; 12 C.J.S. Brokers § 42, l. c. 102; Restatement Restitution, § 197c, p. 809.

8. Curotto v. Hammack, 362 Mo. 457, 462–463, 241 S.W.2d 897, 899, 26 A.L.R.2d 1302; Wendt v. Fischer, 243 N.Y. 439, 154 N.E. 303, 304(4) (per Cardozo, J.); Whiting, supra note 6, 255 P. at 864(4); Thompson, supra note 6, 115 P.2d at 833(4); Restatement Restitution, § 197c, p. 809.

to the unpaid remainder of $1,000 upon the $1,500 note executed by plaintiffs, for the collection of which they seek to foreclose the deed of trust covering the Counts farm now owned by plaintiffs.

■ In the argument section of their brief, defendants assert that, in any event, equitable relief should not have been granted because (so they say) plaintiffs did not plead or prove that they had no adequate remedy at law. True, plaintiffs' petition did not so allege in haec verba; but, if it had, that averment in and of itself would have constituted nothing more than a conclusion of law. State ex rel. Janus v. Ferriss, Mo.App., 344 S.W.2d 656, 659(1); Thompson v. City of Malden, Mo.App., 118 S.W.2d 1059, 1063(1). The requirement is simply that the petition "allege facts from which the court can draw the conclusion that there is no adequate remedy at law. It is the facts, and not the conclusion, which must be alleged." Gill v. Newhouse, Mo., 178 S.W. 495, 499(1); Blattel v. Stallings, 346 Mo. 450, 455, 142 S.W.2d 9, 11(2). Plaintiffs did allege in their petition, and subsequently proved upon trial, all of the sustantive facts needed to draw that conclusion. See Adams v. Richardson, Mo., 337 S.W.2d 911, 916(5).

■ Defendant's argument also includes the singularly bold but strangely unelaborated asseveration that "they [plaintiffs] have capably demonstrated that they indeed do have an adequate remedy at law." It was well said long ago that "to oust jurisdiction in equity the remedy at law must be so complete that it attains the full end and justice of the case, reaching the whole mischief and securing the whole right of the party in a perfect manner at the present time and in the future." Pocoke v. Peterson, 256 Mo. 501, 519, 165 S.W. 1017, 1022(6); Schwab v. City of St. Louis, 310 Mo. 116, 125, 274 S.W. 1058, 1060(2). See Hughes v. Neely, Mo., 332 S.W.2d 1, 7(7); Antoine v. Fletcher, Mo. App., 307 S.W.2d 898, 905(7). With that in mind, we confess our inability to conjure up an adequate remedy at law for instant plaintiffs, threatened as they are with loss of their farm at a foreclosure sale conducted for the purpose of collecting the tainted and forbidden remainder of a note obtained by defendants Shelton in breach of a fiduciary duty. By plaintiffs' payment in full, prior to institution of this suit, of the bona fide and collectible portion of the debt evidenced by the $1,500 note, the lien of the deed of trust securing payment of that note was destroyed [McClung v. Missouri Trust Co., 137 Mo. 106, 119–120, 38 S.W. 578, 582(3); Hecker v. Putney, Mo. App., 196 S.W.2d 442, 445(4)], and plaintiffs clearly had a right to enjoin foreclosure and sale of their farm under that deed of trust.[9]

■ The trial court perpetually enjoined defendants from foreclosure under the deed of trust securing payment of the $1,500 note and taxed the costs against defendants but did not decree cancellation of the note and deed of trust, no doubt because plaintiffs did not specifically pray for that relief. However, the prayer of plaintiffs' petition did include a request "for such other and further relief as the court may deem equitable." That general prayer for relief permitted in the trial court, and on

---

9. Anderson v. Curls, Mo.App., 309 S.W.2d 692, 696(10, 11); McGill v. Hampton, 241 Mo.App. 768, 268 S.W.2d 74(2); Hecker v. Putney, Mo.App., 196 S.W.2d 442, 445(4); Cavally v. Crutcher, Mo. App., 9 S.W.2d 848. See Leone v. Bear, 362 Mo. 464, 473, 241 S.W.2d 1008, 1013–1014(8); Wolz v. Parker, 134 Mo. 458, 35 S.W. 1149(2); Brooks v. Owen, 112 Mo. 251, 264, 19 S.W. 723, 726(4), on rehearing affirmed on this point 112 Mo. at 267, 20 S.W. 492, 493, but reversed on other grounds 112 Mo. at 265–267, 20 S.W. 492; Ryan v. Gilliam, 75 Mo. 132; Farrell v. Seelig, Mo.App., 27 S.W.2d 489, 491(1); Glines v. Theo. R. Appel Realty Co., 201 Mo.App. 596, 604–605, 213 S.W. 498, 499; 59 C.J.S. Mortgages § 506d, p. 825; Id., § 506e, p. 827.

our review de novo authorizes here [V.A. M.R. Rule 83.13(c); Rosenfeld v. Glick Real Estate Co., Mo., 291 S.W.2d 863, 872 (4); Lucas v. Smith, Mo., 383 S.W.2d 513, 518(7)], the balancing of all equities within the scope of the pleadings and the evidence,[10] for once rightfully possessed of a cause a court of equity will not relinquish jurisdiction short of doing full and complete justice between the parties.[11] We are of the considered opinion that, in the circumstances of this case, the doing of full and complete justice between the parties also dictates the cancellation of the $1,500 note and the deed of trust securing payment thereof, in order that the possibility of litigation to collect that note may be barred and the uncancelled deed of trust may not becloud plaintiffs' title to the Counts farm.

It is, therefore, the judgment of this court (a) that the judgment and decree of the Circuit Court of Dent County entered of record on February 13, 1967, be set aside; (b) that the cause be remanded to said circuit court with directions to enter of record a judgment and decree (1) cancelling the promissory note originally in the principal sum of $1,500 dated April 24, 1965, executed by plaintiffs and payable to the order of defendants Shelton, (2) cancelling the deed of trust of even date therewith executed by plaintiffs to secure payment of that promissory note and conveying the Counts farm to defendant Addison, as trustee, (3) directing that said note and deed of trust be delivered to the clerk of said circuit court for endorsement of such cancellation on the face thereof and for delivery thereafter to plaintiffs, (4) perpetually enjoining defendants from foreclosing, or attempting to foreclose, under

that deed of trust, and (5) taxing the costs against defendants; and (c) that the costs of this appeal likewise are taxed against defendants.

HOGAN, P. J., and TITUS, J., concur.

---

10. Ridenour v. Duncan, Mo., 291 S.W.2d 900, 907(9); Cannon v. Bingman, Mo. App., 383 S.W.2d 169, 173(2); Wenzelburger v. Wenzelburger, Mo.App., 296 S.W.2d 163, 165(2); Caldwell v. Wright, 88 Mo.App. 604, 610–611(2).

11. Anison v. Rice, Mo., 282 S.W.2d 497, 502(4–6); Missouri Cafeteria v. McVey, 362 Mo. 583, 594, 242 S.W.2d 549, 553 (7); Woods v. Cantrell, 358 Mo. 1006, 1014, 218 S.W.2d 613, 616(2); McDown v. Wilson, Mo.App., 426 S.W.2d 112, 118 (4); Wenzelburger, supra note 10, 296 S.W.2d at 165(3).