ELIZABETH V. LINGKE, Appellant, *v.* LYMAN L. WILKINSON
et al., Respondents.

The relationship of father and son will not, of itself, invalidate a lease by
the former, as agent or trustee, to the latter, or authorize the disaffirm-
ance of the transaction by the principal or *cestui que trust.* The fact of
the relationship is a material one in determining the question whether
there was fraud, in fact, in the transaction, but it does not, *per se,* con-
stitute fraud in law or bring the case within the rule prohibiting an
agent or trustee from dealing with the subject-matter of the agency or
trust for his own benefit. (DWIGHT and REYNOLDS, CC., dissenting.)

(Submitted January 15, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the
Supreme Court in the fourth judicial department, affirming
a judgment in favor of defendants, entered on the decision
of the court at Special Term.

The action was brought by the plaintiff, who was the owner
of certain real estate in the city of Auburn, to set aside a
lease thereof, executed in February, 1864, by the defendant
Lyman L. Wilkinson, as her agent, acting under a power of
attorney, to defendant George B. Wilkinson; and, also, for
an account and recovery of the profits derived from increased
rents on relettings of the premises.

After the cause was at issue, it was referred to a referee
to hear the proofs and report the facts to the court. The
referee reported the facts found by him therefrom, sub-
stantially, as follows: That such lease was made, and that
the defendant George B. Wilkinson hired the premises with
the intent of using them in his own proper and legitimate
business; that he afterward sublet them for a price consider-
ably greater than he had agreed to pay for the same by the
terms of the lease; that such increased price was obtained in
consequence of the rise in the price of rents in the city of
Auburn after the lease was given; "that the said lease was
made without fraud or collusion by the defendants or either
of them, and the same was so leased for a fair rent, and for as

much or great a sum as the premises were worth and would, at the time of said leasing, command;" and that he was "not able to see or find, from the evidence given on the trial, that the defendants, or either of them, have been guilty of any fraud or collusion, or breach of trust or duty in reference to any of the matters alleged in the complaint;" that the prices and rental of said lease was a fair and reasonable value for said premises up to about the 1st of March, 1864, after which time, and up to the time of the commencement of this action, the price and value of said premises would have been and was considerable more than the rent stipulated in said lease; that rents of similar property to that of the plaintiff began to advance soon after the month of February, 1864, and continued to increase up to the time this suit was commenced and it so increased about fifty per cent; that the defendant, George B. Wilkinson is a son of the defendant Lyman L. Wilkinson, and, that he, at the time the lease was made, was about twenty-three years old and lived with his father, that he was in no particular business, that he was irresponsible, and that no security for the payment of the rent was required or given by him; that for some time previous to the giving of said lease, the said Lyman L. Wilkinson had tried, without success, to rent the premises, but found no tenant or tenants to whom he could rent them; that George B. Wilkinson, when he took the lease, was aware of his father's agency, and plaintiff's ownership of the property leased; that the intent of both father and son was, that the son should have the benefit accruing from the said lease, whether from rise of rents or advantages or benefits of the occupation of the property, but that there was no evidence showing that at that time either party anticipated any future rise in rents, or that the probability of such rise could have existed in the minds of either of them; that no advantages had resulted from said lease to the son from the terms and conditions of the lease, except from the rise of rents and the increased demand for the rental of the property, and that the benefits and profits to him have resulted from the rise in rents, exclusively, which were

unforeseen at the time the lease was made; that, after its execution, the father acted as the agent of the son in the rental of the property covered thereby; that the plaintiff, with her husband, was absent in Europe at the time the lease was made; that Lyman L. Wilkinson, during such absence, wrote several letters to them, but he did not communicate the fact to them, or either of them, of making the lease to his son : that they remained ignorant thereof, until their return in January, 1866, and that the plaintiff had not ratified or approved of the said lease.

The cause was afterward brought to trial at Special Term upon the pleadings and the facts found and reported by the referee (without the production of the evidence taken by him), and the court found "that the facts contained in the report of the referee are the established facts in the case;" and, as a conclusion of law upon the facts thus established, that the lease in question was a *bona fide* lease and entitled the lessee therein named to hold, use and occupy the said premises until the full end and expiration of five years from the commencement of the term thereby created, upon his performance of the terms and conditions of such lease, and that the plaintiff was not entitled to have the same assigned or canceled, or to any accounting from the defendants or either of them, and, thereupon, ordered judgment that the plaintiff's complaint be dismissed, with costs of the action.

Judgment was entered accordingly.

*Cox & Avery* for the appellant. The contract made by the father, as agent of plaintiff, with his son was unlawful and liable to be disaffirmed by the principal. (*Gardner* v. *Ogden*, 22 N. Y., 327, 348, 349, and cases cited; *Hall* v. *Noyes*, 3 Brown C. C., 483; *York Bldgs. Co.* v. *Mackenzie*, 8 Bro. P. C., 7; 3 Paton, 378; *Davoue* v. *Fanning*, 2 J. Ch., 252, 259–261; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Hanley* v. *Crane*, 4 Carver, 717; *Slade* v. *Van Vechten*, 11 Paige, 21; *Decaters* v. *Chanmount*, 3 id., 178; *Abbott* v. *Hard. R. Co.*, 33 Barb., 594.) It is not necessary for fraud

to appear in such a contract; the law imputes fraud. (*Davoue v. Fanning*, 2 J. Ch., 260; *Claflin* v. *F. and Cit. Bk.*, 25 N. Y., 293; *N. Y. C. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 id., 91; *Case* v. *Carroll*, 35 id., 388; *Conkey* v. *Bond*, 36 id., 429; *Jewett* v. *Miller*, 10 id., 402, 405.)

*G. O. Rathbun* for the respondents.

LOTT, Ch. C. The findings of fact by the judge at Special Term, having been affirmed by the General Term, are conclusive on us. It appears that the evidence taken by the referee, on which he found and reported those facts under the order of reference to him, was not presented to the judge on the trial of the issues, and he consequently assumed, as he was bound to do, that those facts were established. They show that the defendant Lyman L. Wilkinson, in the exercise of the power conferred on him by the plaintiff, after an unsuccessful effort for some time to rent the premises in question to other parties, leased the same to his son (the co-defendant) at a fair and full rent therefor at the time the lease was given, without any anticipation or expectation or ground for the belief, by either of them, that there would be an increase of rents for property of that description in the city of Auburn, where it was situated (although they did, in fact, subsequently increase), with the intention that the son alone should have the benefits accruing from the lease; that the son subsequently fitted up a portion of the premises at his own expense and in it carried on the auction and commission business for a short time, but that it proved unsuccessful, resulting in his failure and a loss of the capital invested therein, which had been advanced by his father, amounting to $1,000. They showed, further, that such lease was made without any fraud or collusion by the defendants, or either of them, and that the increase of rents, for which the premises were afterward sublet, was owing to the rise of rents and an increased demand for the rental of that class or kind of property, and that all benefits and profits to the son from the

lease had resulted from the rise in rents exclusively, and were unforeseen at the time it was given. The material facts found tending to impeach the transaction, irrespective of the increase of rents, were, that the son was at the time living with his father; that he was about twenty-three years of age, and not engaged in any particular business; that he was irresponsible; that no security for the payment of the rent was required or given by him, and that the father acted as the agent of the son in the rental of the property covered by the lease after its execution. These latter circumstances were shown not to have operated to the prejudice of the plaintiff, inasmuch as it appeared that the rents payable to her had been fully paid, and that all the terms and conditions of the lease (which were found to have been of no peculiar advantage to him) had been fulfilled by the son. They were, however, very proper and important matters to be considered by the referee, in connection with the other facts found, in determining the fact whether the transaction was *bona fide* or fraudulent, and required him to scrutinize the dealing between the parties with extreme vigilance, and to examine all the evidence bearing on the question with great care and deliberation. It must be assumed, in the absence of the evidence before him, that he did so. We, at all events, cannot say that there was no proof to establish and justify the facts found by him and adopted by the judge at Special Term; and as it is specially found that the lease was for the use and benefit of the son only, and that the defendants had, neither of them, been guilty of any fraud or collusion, or breach of trust or duty in reference to any of the matters alleged in the complaint, the judge did not err in his conclusion of law, upon the facts thus found and established, that the lease in question was a valid *bona fide* lease entitling the lessee to all the benefits thereof on his performance of its terms and conditions on his part, and, consequently, that the plaintiff's complaint should be dismissed. That conclusion was based on the assumption that the transaction was sought to be impeached as fraudulent *in fact*. Such, evidently, was the object of the complaint. It

charges that Lyman L. Wilkinson executed the lease to his son with a view of profiting himself at the plaintiff's expense by speculating with the subject of his trust; that the son acted in collusion with his father, and that the property was subsequently managed and controlled by the father. The facts, as found by the referee and adopted by the court, as has already been stated, failed to establish the fraud alleged, and the claim for relief on that ground was not sustained by the Supreme Court. It is now, however, claimed that the relationship between the father and son incapacitated them from a dealing with each other in reference to the property intrusted to the care of the father, and that the transaction operated as a fraud, *in law*, against the plaintiff. That view of the case does not appear to have been presented in the courts below. There is no allusion to the question in the opinion of the judge who tried the issues at Special Term; and there is nothing in the case to show that it was urged or considered at the General Term. Assuming, however, that it was, the claim is not tenable. The naked fact of such relationship did not create any duty or obligation by the son to the plaintiff, nor give him any information affecting the property or the nature of the business which enabled him to obtain undue advantage of her in the transaction. It is a rule and principle well established in equity, that no person standing in the relation of a trustee or agent to another, can, directly or indirectly, purchase or acquire any interest in the subject of the trust, or secure an advantage to himself from such relation; and it extends to all persons having such connection with the trustee or agent, as partner, clerk, or otherwise, so as to raise the presumption that they have thereby, or by means thereof, acquired such a knowledge of the property and business of the principal, which would not otherwise have been obtained, as to secure them an advantage over other parties. It is based and founded on the ground that, if persons having a confidential character were permitted to avail themselves of any knowledge in that capacity, they might be induced to conceal their information, and not to exercise it

for the benefit of the persons who relied on their integrity or judgment in the execution of the trust committed to them. The duties of a trustee or agent to his *cestui que trust* or principal are inconsistent with a dealing on his own private and individual account and benefit with the subject of the trust or agency. This question was fully discussed and considered in *Gardner* v. *Ogden* (22 N. Y., 327, etc.), and it was there held that a clerk of a broker, employed to make a sale of land, who had access to the correspondence between the broker and his principal, stood in such relation of confidence to the latter as to charge him, on becoming a purchaser of property, as trustee for the vendor. The rule applies where there is a *confidential* relation between parties, creating or tending to produce a conflict of duty and interest by a trustee or agent, in dealings or transactions relative to the subject-matter of his trust or agency. (See, also, *Case* v. *Carroll*, 35 N. Y., 385.) The relationship between a father and son does not, of itself, create any connection or relation between the son and the *cestui que trust* or principal of the father, to make the rule applicable. It is a material circumstance, pertinent to the question of fraud *in fact*, to be determined by a court or jury, in reference to any dealings between them, but it is not, *per se*, a fraud *in law*. The peculiar nature of the relationship between a husband and wife has been held to invalidate transactions resulting in the transfer of property, held in trust, to or for the benefit of the wife, and to prevent dealings between them affecting the subject of the trust. (See *Davoue* v. *Fanning*, 2 John. Ch., 252; *Dundas' Appeal*, 64 Penn. St., 325.) Such transactions are properly treated as made by the trustee with himself. We have not been referred to any case, nor am I aware of any, where any other relationship has, of itself, been held to be within the principle of the rule referred to; and we do not think that public policy requires it to be extended to that of father and son.

Our conclusion upon the whole case, therefore, is, that there

is no ground for the reversal of the judgment appealed from. It must, therefore, be affirmed, with costs.

DWIGHT, C. (dissenting). The facts of the case, as found by the referee, present the question, whether an agent having a power of attorney, in the absence of his principal, to make a lease of land, can enter into such a lease with his own son, so as to make it binding as against the principal, or, whether, on the other hand, the case falls within the principle of the general rule of law, that a trustee or other person acting in a fiduciary capacity can not deal for his own benefit.

In considering this question, it will be assumed, as the referee has found, that there was no actual fraud in the case, though, as was well remarked by the court below, the referee would have been apparently justified in arriving at a different conclusion. The true rule in respect to a dealing by a trustee, etc., with the property of the principal is, that fraud is not a necessary ingredient in testing the validity of the transaction. It should be observed, that the present case is not a transaction between the principal and agent, but one taking place in his absence and without his knowledge. Where a trustee deals for his own benefit in such a case, the beneficiary has an option to either affirm or repudiate the transaction, without being bound to assign any reason for his action. The fact that there was no fraud is wholly immaterial. (*Boerum* v. *Schenck*, 41 N. Y., 182; *Gardner* v. *Ogden*, 22 id., 327; remarks of DENIO, J., in *N. Y. Central Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 id., 85.) The beneficiary may, undoubtedly, bind himself by acquiescence in the conduct of the trustee. (*Boerum* v. *Schenck*, 41 N. Y., 200, note.) But of this there is no evidence in the present case.

The rule must be extended in all its breadth, not only to pure trustees but to all persons acting in a fiduciary capacity. It, accordingly, includes agents acting for their principals under a power of attorney or other authority. Lord CRANWORTH said, in *Aberdeen Railway Co.* v. *Blaikie Brothers* (1 MacQueen, 461): "An agent has duties to discharge of a

fiduciary character toward his principal, and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has, or can have, a personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. No question is allowed to be raised of the fairness or unfairness of the contract entered into." *Cumberland Co.* v. *Sherman* (30 Barb., 553) is a case arising between principal and agent. To the same point are *Taylor* v. *Salmon* (4 M. & C., 139); *Gardner* v. *Ogden* (*supra*); *Conkey* v. *Bond* (34 Barb., 276; S. C., 36 N. Y., 427).

These principles must be regarded as elementary. The only question really open for discussion in the present case is, whether these doctrines can be extended to a case where a trustee does not deal directly with himself, but with others in whom he may be presumed to be interested by the nearness of relationship. This point does not appear to have been decided in the English courts. It is the most satisfactory method to consider it upon general principles. The doctrine on this subject does not turn solely upon the proposition that the trustee cannot make pecuniary profit from the trust relation. It has a wider scope. It is largely founded on public policy. It rests upon a determination on the part of the courts to keep the channels of communication between the parties wholly pure. The position of trustee or agent gives him the opportunity to acquire knowledge concerning the subject of the trust which he could not, otherwise, obtain. He is bound to apply that knowledge solely for the benefit of his principal. He must not so place himself that he cannot regard his principal's interest with an impartial eye. (*Ex parte James*, 8 Ves., 348.) For this reason he cannot act in respect to the subject of his agency for a third person, for he might make an undue use of information, acquired in a fiduciary character. (*Ex parte Bennett*, 10 Ves., 381; *Coles* v. *Trecothick*, 9 id., 248.) The principal, in employing one to act for him, stipulates for his best judgment, uninfluenced by any relationships calculated to disturb or warp his

reason. It is manifest that, if two opportunities to lease had presented themselves in the present case, and the one offered by the son had been less advantageous than the other, there would have been some danger that the terms tendered by the agent's son would have been accepted. The law wisely averts the danger by declaring that the agent shall not lease to his son except upon the terms that the principal may, if he see fit, disaffirm the transaction. If it be objected that if the lease had not been made, the property might have remained unoccupied, the answer is that, in that case, the agent is not in fault. He is only bound to use due diligence in leasing to persons competent to take a lease. If he chooses to make a lease to so near a relative, he must do it at the risk of his principal's disaffirmance. If it be asked how far this principle is to be carried, and what relations are to be included, the answer is, that it is fairly to be extended to those who are so nearly allied to the agent as to be likely to disturb his judgment. Of course, the present case would only extend it to the relationship of a son. Other cases will be decided as they arise. Where the facts of the case justify it, the agent or trustee may ask the consent of the court to deal with his relative. The transaction may then be surrounded with the requisite safeguards. It is so easy at the present time, in this State, to make such applications to courts having equity powers, that there is no plausible reason for conceding to agents and trustees, in general, powers of such doubtful expediency as would allow them to convey the trust estate to near relatives.

These views are confirmed by the recent case of *Dundas'*
*Appeal* (64 Penn. St., 325, 333 [A. D. 1871]). The question there concerned the validity of a sale by a trustee to his wife. The court said that unless the sale were sustained by an application to the court, it would be set aside at the instance of the *cestui que trust;* not on the ground of the marriage, but of *her relationship to the trustee.* It was added, that it would be evidence of unfairness quite as much as if the sale were made to the trustee himself, and fully within the spirit of the

rule which forbids his own purchase. The wife's right to purchase was distinct from the husband's power to sell, and, *but for the influence of the relation upon him,* she had a right to bid for the property. These views seem perfectly sound, and place the position of a trustee above a temptation to be influenced by family interest or affection to sacrifice the interests of a beneficiary to that of near relatives. They apply to a son as well as to a wife. It is no answer to say that honorable men will not be influenced by affection for their sons to swerve from the path of duty. The law establishes a rule for all parents, which is not burdensome to the upright, and is at the same time a necessary support to those who are weak in purpose and prone to yield to the importunities of those they love, while at the same time they are aware that their conduct is irregular.

The son, in the present case, cannot claim that he was a purchaser in good faith, as he was aware of his father's relations to the property, and must take the lease *cum onere.*

The plaintiff, accordingly, may have the transaction set aside, or may have a declaration that the son holds the subleases as a trustee for him. (Story on Equity, § 1211 *a,* and cases cited.)

The judgment should be reversed.

REYNOLDS, C. (dissenting). The principle involved in this case is not materially different from that upon which the Court of Appeals pronounced its judgment in *Gardner* v. *Ogden* ( 22 N. Y., 327), and the numerous cases upon which that judgment proceeded. That Lyman L. Wilkinson occupied a very confidential trust relation to the plaintiff cannot, for a moment, be questioned ; and he could not, in any way known to the law, so manage the business of his trust that he could derive any pecuniary benefit to himself, either directly or indirectly, beyond the stipulated amount agreed to be paid for the faithful performance of the duties of his trust to the very best advantage of the party who had confided in him. As, in this case, the plaintiff was absent in a foreign country, it

is not too much to say that the agent was charged with a very special degree of duty, as to fidelity and diligence in guarding her interests.

It was not at all necessary for the plaintiff to show any actual fraud in the conduct of her agent, to enable her to disaffirm his acts. It was quite enough to find, on her return home, that her interests had greatly suffered by the agent's acts, at least of very questionable character, and, I think, quite sufficient to indicate that he had been unfaithful to his trust. The undisputed fact that the plaintiff's agent, Lyman L. Wilkinson, leased to his son George, then about twenty-three years of age, living with his father and in no particular business, pecuniarily irresponsible, gave, and was required to give no security for the payment of the rent, all the property of the plaintiff in the agent's charge, with an immaterial exception ; and that, thereafter, the father acted as the agent of the son in subletting the plaintiff's property, for which higher rents were realized, presents a transaction offensive to any rule of law, by which the conduct of a trustee or agent ought to be judged. Of this transaction the plaintiff was never informed by her agent, and she knew nothing of it until she returned from Europe, in 1866, two years after the father had leased her property to his son, and had attempted to renounce his allegiance to her and to transfer it to his son, who, it may be fairly assumed, was then supported in the father's family.

I shall never agree that such a transaction can be approved by law. Soon after the lease to the son was made, rents advanced about fifty per cent, and that profit, out of the plaintiff's property, was realized by the father or son, or both, and to my mind it is immaterial by which. Lyman L. Wilkinson, under the circumstances, had no legal right to lease the plaintiff's property to the son, and then assume the agency of it for him at the expense of the plaintiff. The relation of the parties forbid it ; and the plaintiff was at liberty to affirm or disaffirm as she pleased. If it be the fact, that the rent received by the father in the lease to the

son was, at the time, apparently reasonable, it does not alter the rule, as was squarely decided in *Gardner* v. *Ogden* (*supra*), where the agents made a sale of property, then at a fair price, to a clerk having a desk in their office, and which, afterward, largely appreciated in speculative value, and the sale was set aside and the purchaser required to account, because of his apparent confidential relation to the agents of the owner of the property. In that case, I think, the application of the general rule was very rigid, and the doctrine there approved certainly should not be extended; but, in this case, I think, the plaintiff's right to disaffirm the act of her agent, and call him to account, can be vindicated by the application of legal rules that are approved in all courts and places. (*Gardner* v. *Ogden*, 22 N. Y., 344; *Case* v. *Carroll*, 35 id., 388; *Conkey* v. *Bond*, 36 id., 429; *Fox* v. *Mackreth*, 2 Bro. Ch., 400; Sugden on Vendors and Purchasers, 566; *Jewett* v. *Miller*, 10 N. Y., 402.)

It is, I think, apparent that, in the Supreme Court, the case was decided upon the assumption that its real merits were not before the court; for it is very obvious, from the opinions delivered, that the force and legal effect of the apparent infidelity of the plaintiff's agent was, at least to a very large extent, appreciated. It appears to me that, upon the original report of the referee, judgment should have been given for the plaintiff at the Special Term of the Supreme Court. A different result, however, was reached, and upon an appeal from the judgment dismissing the plaintiff's complaint, it was affirmed by the General Term. If it be true, as it seems to be, that the referee's report in such a case is to be regarded as a special verdict, upon an appeal it is our duty to render such a judgment as should have been given in the court below. It is not unlikely that the practice pursued by the plaintiff's counsel was not altogether artistic or prudent. He should have presented, with the referee's several reports upon which judgment was sought, the evidence upon which the several reports were founded, if he desired to assail any fact found by the referee. But he, quite likely, assumed that,

upon the facts found by the referee, the plaintiff was entitled to judgment; and I think he had a correct view of the law of the case as it was then presented. He was, however, admonished by the court, at Special Term, that he was in error, and the admonition was repeated on appeal to a General Term of the same court. After this he applied for leave to move the Special Term of the Supreme Court, upon the proceedings and evidence before the referee, to set aside the reports of the referee and all the judgments then entered, and for a new trial; and such leave was granted, and the motion afterward heard and denied, apparently, upon the ground that the erroneous judgment rendered was beyond the power of the Supreme Court to correct, vacate or set aside. To this proposition I do not agree; and I am of opinion that the judgments should all have been vacated, and either a judgment ordered peremptorily for the plaintiff, or a new trial granted. But, as I am of opinion that, upon the facts found by the referee in his several reports, the plaintiff was entitled to a judgment in her favor, according to the prayer of the complaint, it is not necessary to consider whether an appeal from the order, refusing a new trial, can be heard here.

While a majority of my brethren agree to the general rule of law, in respect to agents and trustees, as I have stated it, they think it should not be applied to this case, for the reason that the doctrine has never been extended, by any reported decision, so as to allow the disaffirmance of a transaction between father and son simply on account of that relation. It is very likely that no such case can be found in the books, and, possibly, for the reason that no such case has ever before occurred — for a transaction, apparently so flagrant as this would very seldom occur. I see no difficulty or danger in giving application to the rigid rule of law, demanding perfect fidelity in the action of all classes of agents and trustees, to this particular case, for, I cannot resist the conviction that a more shameless breach of duty was never committed. There is nothing to show but that the relation of father

and son, in this case, was as confiding and confidential as all the relations of near kindred are generally supposed to be. It may not have been altogether pecuniary, but it is obvious the son was a dependent upon the father. I do not mean to say that every transaction of this character between near relatives would necessarily be void, but I do say, that, upon the facts of this case, the transaction ought to be condemned.

For affirmance, LOTT, Ch. C., GRAY and EARL, CC.

For reversal, REYNOLDS and DWIGHT, CC.

Judgment affirmed.