ALMA M. CUROTTO, Plaintiff-Appellant, v. JOHN T. HAMMACK, FRANK C. FREESMEIER, Guardian of the Person and Estate of ELIZABETH FREESMEIER, Also Known as E. FREESMEIER, and DIMMITT-RICKHOFF-BAYER REAL ESTATE COMPANY, INC., a Corporation, Defendants-Respondents, No. 41893—241 S. W. (2d) 897.

Division One, September 10, 1951.

*John E. Cramer, Jr.,* for appellant; *Bakewell, Bakewell & Cramer* of counsel.

*Kerth & Schreiber* by *Dalton W. Schreiber* for respondent Frank C. Freesmeier, Guardian and Curator of Elizabeth Freesmeier.

*John A. Nolan* for respondent John T. Hammack.

LEEDY, P. J.—This is a suit in equity brought by Alma M. Curotto, who was the owner of certain real estate in St. Louis County, to set aside a deed to that property executed by her on September 12, 1945, to Elizabeth Freesmeier (also known as E. Freesmeier), and for an accounting of the rents and profits subsequently accruing, and for general relief. The defendants are John T. Hammack (son-in-law of the grantee), Frank C. Freesmeier, guardian and curator of (his mother) Elizabeth, the grantee (who was adjudged incompetent subsequent to the date of the deed and prior to the institution of this suit), and Dimmitt-Rickhoff-Bayer Real Estate Company, Inc. The decree, upon a general finding of the issues in favor of all the defendants, dismissed ▇▇▇▇ plaintiff's petition, and she appealed. The parties will be referred to as they were styled in the trial court. The defendant real estate company has filed no brief. The other defendants have filed separate, although substantially identical, briefs.

Plaintiff's claim of right to cancellation of the instrument and other relief is based not upon fraud in fact, but wholly upon certain facts as constituting fraud in law. In the view we take of the case, it turns upon the effect of facts which are not in dispute, and hence an extended statement, as in the ordinary review of equity cases, de novo on the record below, is deemed unnecessary.

The property is income-producing, located at 1019-23 Big Bend Boulevard, Richmond Heights, improved with a store building and offices. Hammack, an agent in the employ of, and sales manager for, the defendant real estate company, solicited and obtained from the plaintiff (a widow) a written contract appointing the company as her exclusive agent for 30 days to sell the property for the price of $26,000, she agreeing to pay a commission of 5% in consideration of their services. Plaintiff's dealings with the company were through Hammack, whom she had known for several years. On the last day of the life of the listing contract, July 12, 1945, Hammack presented to the plaintiff at her home a contract providing for the sale of the property at the price of $26,000, signed by "E. Freesmeier." Disregarding the very sharp conflict between the versions of plaintiff and Hammack as to what was said by them, respectively, concerning the

identity of E. Freesmeier before signing the contract, and treating that matter solely from the standpoint of Hammack's own testimony, it appears that, in response to her inquiry, he told her no more than that E. Freesmeier was a "client" of the office of Dimmitt-Rickhoff-Bayer Real Estate Company, Inc. Plaintiff was not told that E. Freesmeier was his mother-in-law. The proposed purchaser was, in fact, Hammack's aged, widowed mother-in-law, who was then, and ever since 1927 had been, living in his home and that of his wife as a member of their household. Not only that, but Hammack was largely (if not exclusively) entrusted with the management and control of her property and financial affairs. He had negotiated a very considerable number of real estate transactions throughout the years, using her in some as a straw party (compensating her for that service), and in others acting directly for her, as her agent.

To carry out the contract, it was necessary that the purchaser refinance the property. For such purpose two loans were negotiated (upon an appraised value of $30,000), one for $18,000 from Roosevelt Federal Savings & Loan Association, and one for $1500 from one Brown, an individual. Both were arranged by Hammack. The notes were signed by Elizabeth Freesmeier and Hammack, and secured by deeds of trust signed only by Elizabeth Freesmeier. The explanation of his becoming a co-maker of the two notes (which was supported by substantial evidence) was that it was a requirement of the lenders because of the advanced age of the real borrower, Mrs. Freesmeier, and the uncertainty of her income.

██ For our purposes, we will treat the proof as failing to sustain plaintiff's allegations that her property was acquired by Hammack for himself or jointly for himself and his mother-in-law, but, on the contrary, it will be deemed that in the negotiations culminating in the sale he acted on behalf of his mother-in-law, and that the title was, accordingly, taken in her name.

All of the parties concede the universal rule to be that a broker employed to sell property cannot, without the principal's full knowledge and consent, become the purchaser. This rule has been held to extend to employees, partners, and near relatives. 12 C. J. S., Brokers, § 42, p. 103. See, also, 2 Am. Jur., Agency, § 257, and 20 L. R. A. (N. S.) 1159 et seq. It is upon the rule as thus extended that plaintiff relies, her whole claim being founded upon the failure of Hammack, as her own agent, to disclose to her the fact ██ that the prospective purchaser produced by him was his own mother-in-law, and for whom he was acting. In the separate briefs of Hammack and his mother-in-law's guardian the position is taken that he was under no duty to disclose the fact of that relationship. Such is the pivotal issue. True, no case has been cited where the relationship considered happens to have been the precise one here involved.

Anent the general proposition above stated, Judge Lamm, in Meek v. Hurst, 223 Mo. 688, 698, 122 S. W. 1022, 1024, 135 Am. St. Rep. 531, said this: "The doctrine of the law that forbids an agent to buy from or sell to himself is not necessarily based on the idea that such deal in dirt is (to speak colloquially) a 'dirty' deal; that is to say, resulted in an injury to or a fraud upon him. But it is rather based on the idea of closing the door to the temptation to commit fraud. It tends to keep the agent's eye single and clear to the rights and welfare of his principal. To allow one acting in the fiduciary relation of agent to buy from or sell to himself is a solecism in the realm of law; for the moral stamina of the average man is inadequate to preserving a fine glow of fidelity to his trust and confidential relation in such transaction, and the interdiction is enforced with a strong hand in courts of justice."

In McNeill v. Dobson-Brainbridge Realty Co., et al., 195 S. W. 2d 626, the broker was a corporation, as here. Its principal, the seller, Mrs. McNeill, dealt with one of the corporation's agents, Morgan, who took a conveyance to himself "as trustee" without disclosing that it was his own mother for whom he was acting. It was held that he was under the duty of disclosing such fact, and that it was immaterial whether there was fraud in fact, or that the seller may have received a fair price. In reaching that conclusion the Supreme Court of Tennessee said (among many other statements relevant to our inquiry), at l. c. 630: "It is appropriate to observe in this connection that he violates his duty just as much as in a sale to himself 'if, unknown to his employer and in the latter's behalf, he undertakes to sell to or purchase from one to whom he is related by the ties of kindred, for his natural desire to favor his own would be more or less detrimental to the interests of his employer.'"

Similarly in Wendt v. Fischer, 243 N. Y. 439, 154 N. E. 303, the firm of real estate brokers there involved sold to a corporation of which one of their members was head, and who held all of the stock for the beneficial interest of his fiancee. There, as here, the seller was told that the sale was to be made to a client of the brokerage office. The disclosure was held insufficient as being too indefinite and ambiguous, and the sale was held to be voidable at the option of the seller, the broker being under a disability to buy without a full and frank disclosure of his relation to the purchase, and this notwithstanding the fact that his ownership of the stock in the purchasing company was nominal, and that the profits would benefit another. The opinion, written by Judge Cardozo, says this: "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance (Dunne v. English, L. R. 18 Eq. 524; Imperial Merc. & Credit Assn. v. Coleman, L. R. 6 H. L. 189). Finally, we are told that the brokers acted in good faith, that the terms procured were the best obtainable at the moment,

and that the wrong, if any, was unaccompanied by damage. This is no sufficient answer by a trustee forgetful of his duty. The law 'does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.' Munson v. Syracuse, G. & C. R. Co., supra, [103 N. Y. 58] at page 74, 8 N. E. 355; cf. Dutton v. Willner, 52 N. Y. 312, 319. Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion.'' In this same connection, see Crowley v. Rorvig, (Mont.), 203 P. 496.

The three cases relied on by respondents on this proposition are Lingke v. Wilkinson, 57 N. Y. 445; Citizens Bank v. Fire Insurance Co., 91 Kan. 18, 137 Pac. 78, 49 L. R. A. (N. S.) 972, and Walker v. Carrington, 74 Ill. 446. The first one does support them. The relationship there involved was that of father and son, which was held to be material in determining whether there was fraud in fact in the transaction, but it did not, per se, constitute fraud in law, nor bring the case within the rule here involved. The opinion in that case was by a divided court, 3 to 2, decided in 1874, a half century prior to Wendt v. Fischer, supra. In any event, we would adopt the reasoning of dissenting opinions as the better view. Walker v. Carrington, instituted some 20 years after the date of the transactions out of which it arose, counted on both actual and constructive fraud. A sale to a brother-in-law of the agent was upheld, the court being of the opinion that that relation of itself did not imply such confidence between the agent and the purchaser as to preclude the latter from acquiring the property. Its force as an authority would seem to be impaired, if not completely destroyed, by the much later case of Tyler v. Sanborn, 128 Ill. 136, although the latter involved the relationship of husband and wife. The facts of the other case, Citizens Bank v. Fire Insurance Co., are so dissimilar as to render the conclusion there reached as not at all persuasive on the question here involved.

Principal and agent are not dealing as strangers, at arm's length. What might be sufficient to put one on notice in the latter situation has no application whatever to relations of a fiduciary nature, as here. We are at a loss to understand why there should be the slightest hesitancy on the part of the agent and fiduciary in a situation of this kind to impart to his principal the fact of the existence of such relationship. Could it be that the sale might thereby be lost, and with it the agent's commission? Suppose plaintiff had made the discovery before she conveyed, and because of such discovery refused to make the deed, can it be thought that any court in the land would have compelled specific performance on her part? We think the question answers

itself. Morgan v. Hardy, 16 Neb. 427, 20 N. W. 337. See, also, Jewell Realty Co. v. Dierks, 322 Mo. 1064, 18 S. W. 2d 1043.

We hold it was the plain duty of Hammack, as plaintiff's own agent, to make known to her the fact of his relationship to the purchaser. Under the authorities cited, this would ordinarily give her the right to disaffirm the sale; however, that result does not necessarily follow under the facts in judgment. Here the suit was not instituted until 23 months after the transaction, and 11 months after the grantee had been declared incompetent. The record is silent as to the extent and condition of her estate in the hands of her guardian and curator. We may take judicial notice of the fact that between the date of the transaction and the institution of the suit, the purchasing power of the dollar declined steadily and materially, and has ever since continued so to do, in consequence of which, if the sale were set aside, the sum to be refunded by plaintiff would represent, in the hands of the incompetent's representative, only a fraction of its value as of the time of the sale. It is discretionary with the court as to what relief will be awarded, even though plaintiff may have established the grounds on which she seeks cancellation. For the reasons above pointed out, we have concluded that the decree should not be disturbed insofar as it denies cancellation, but that plaintiff should recover from the corporation and Hammack the net amount of the commission paid by her, to-wit, $1100, together with interest thereon at 6%, and that the costs should go against all of the defendants. To this extent, the decree should be, and it is reversed, and the cause remanded with directions to enter a new one in accordance with these views. All concur.