### STEPHENSON v. PFEIFFER et al.

#### No. 21957.

Kansas City Court of Appeals.
Missouri.

Dec. 7, 1953.

Crawford & Harlan, Earl T. Crawford, Samuel P. Harlan, Sedalia, for appellant.

William F. Brown, Lamm, Barnett & Wolfe, D. S. Lamm, Sedalia, for respondents.

SPERRY, Commissioner.

This is a suit brought by Clarence W. Stephenson, a real estate broker, to recover a real estate commission from defendants. The cause was tried to the court, a jury having been waived. Judgment was for defendants and plaintiff appealed.

Defendants owned a business building in Sedalia, a portion of which they occupied

as a floral shop. The balance, consisting of storerooms and offices, was occupied by various tenants, including plaintiff. Defendants executed a "listing" contract with plaintiff giving him the exclusive right, for a certain period, to find a buyer for the property. The price stated was $37,500; and the contract contained the following clause: "Five and five option year lease on current Floral Shop at $100.00 monthly." Plaintiff and the tenants signed and tendered a written contract to purchase within the time specified in the contract.

Defendant Philip E. Pfeiffer testified to the effect that plaintiff talked with him in June, 1951 about selling the building; that he told him that he had a prospective buyer, a man from Kansas; that plaintiff gave him a proposed "listing" contract and suggested that it be signed by witness and Mrs. Pfeiffer; that witness had told plaintiff that he would not sell the property unless he was assured of a satisfactory lease on that portion of the building in which the floral shop of defendants was located; that the above quoted clause was inserted in the contract as a result of his insistence; that plaintiff also told him that he had a prospective purchaser from Springfield; that he furnished plaintiff with information and documents relative to title, leases, mortgage, etc.; that on or about July 27 he returned to the floral shop from a business trip to Warrensburg and was informed that plaintiff and the other tenants were meeting at the office of an attorney, preparing a contract for their purchase of the property; that he immediately went to the office of the attorney, at about 5 p. m., and was told that the tenants, including plaintiff, desired to purchase the building; that a contract was then shown to him, which the prospective purchasers had signed, and he and Mrs. Pfeiffer were requested to sign it; that plaintiff also tendered what witness took to be checks, but that he did not touch them; that this was the first information that he had that plaintiff was to be one of the purchasers; that, under the contract, plaintiff was to become the owner of that portion of the building in which was located the floral shop; that he took, and read, a copy of the contract;

that he did not sign it, or say that he would sign it; that the contract contained no mention of a lease for the floral shop; that he told the parties that he must consult an attorney before signing anything; that he did not know what to do; that he did not want plaintiff for a landlord; that he tried to hold plaintiff's attorney "at bay" until he could find out more about it; that, several days later, plaintiff urged witness to execute the contract and he told plaintiff that he would be down to his office within a few days; that he did not, ever, tell plaintiff that he would sign the contract; that plaintiff discussed with him the terms of a prospective lease but they never reached an agreement as to terms; and that no written lease containing satisfactory terms was ever tendered to him.

Mrs. Pfeiffer testified to the effect that plaintiff came into her store during the afternoon of July 27 and asked regarding Mr. Pfeiffer's whereabouts; that he told her that the tenants were going to buy the building and wanted her husband to come to the lawyer's office and sign the contract; that she told plaintiff that she had not heard about it; that plaintiff stated that he was going to be our landlord; that she may have answered "That's fine," but that she uses that expression with various meanings; that when Mr. Pfeiffer came in, at about 5 o'clock, she told him of the meeting and he asked if plaintiff mentioned a lease; that she told him "no" and he said he wasn't going; that she urged him to go, because of respect for the tenants; that she was ill and went home and to bed.

Plaintiff testified to the effect that he succeeded in interesting the tenants of the building in its purchase; that he and his wife were among the prospective buyers; that the price was to be $37,500, the amount demanded by defendants; that plaintiff was to pay $15,000 of this amount and would have acquired about one-third of the frontage, the more valuable part, including the portion occupied by himself and by defendant's floral shop; that the purchasers met in the office of their attorney and prepared the contract; that Philip Pfeiffer was present and participated in the drawing of the

contract; that Pfeiffer and plaintiff went to Pfeiffer's place of business to procure a warranty deed giving the proper description; that it could not be located at that time and Pfeiffer, later, delivered it at the attorney's office; that plaintiff and all of the other purchasers were present when Mr. Pfeiffer brought in the deed. He stated that Pfeiffer was present in the office when the contract was being dictated; that he had told Mrs. Pfeiffer, before the contract was fully drawn, that he was to be one of the purchasers and that she said "That is fine"; that he had previously told Mr. Pfeiffer, while they were having coffee, that the tenants, including plaintiff, were going to buy the property and that Pfeiffer said that he was glad they were going to buy; that, after the contract was prepared and the purchasers had signed it, he talked to Pfeiffer about his signing and Pfeiffer told him that he would be down within three or four days and sign it; that they also discussed the abstract and payment of a loan on the property; that, at Pfeiffer's suggestion, plaintiff telephoned to ascertain the amount of the loan; that Pfeiffer, at no time, objected to plaintiff as a purchaser.

On cross-examination he admitted that he had testified by deposition, in a former trial, as follows: "That is right, they didn't know who the buyer was until that contract was made, they knew I had several prospects." He stated, in explanation of that testimony, that what he meant was that it had never been determined, until the contract was made, what part of the building would be purchased by each of the several tenants but that it was known that plaintiff would buy the corner and the tenants were going to buy the building. He also testified by deposition to the effect that he did not remember whether or not he had talked to Mrs. Pfeiffer about the matter before the contract was prepared.

Mrs. Stephenson stated that neither of the Pfeiffers was in the office when she signed the contract; Mrs. Fender, one of the purchasers, stated that Pfeiffer was present when the contract was dictated but was not present when it was signed. Mr. Taylor, another purchaser, stated that he was pres-

ent during the entire time the contract was being prepared but that Pfeiffer was not present, that plaintiff went to get him but he was not at his place of business.

■ Since this is a jury waived case we will review it on both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310, subd. 4 RSMo 1949, V.A.M.S.

■ The law is, as both parties hereto concede, that in the absence of full knowledge and consent by the principal, an agent to sell real estate may not, either directly or indirectly, acquire an interest in property which he is commissioned to sell. Curotto v. Hammack, 362 Mo. 457, 241 S.W.2d 897, 898, 26 A.L.R.2d 1302. The Supreme Court, in that case, ruled that such an agent is not entitled to retain a commission paid him for his services in making such a sale. The rule does not depend upon whether or not the principal profited, but rests on public policy. Montgomery v. Hundley, 205 Mo. 138, 149, 155, 103 S.W. 527, 11 L.R.A.,N.S., 122.

■ The Missouri authorities hold that an agent to sell may legally become the purchaser of the subject of the agency if it appears that the principal had full knowledge of the agent's purpose and consented thereto. Hilmer v. Decher, Mo.App., 183 S.W.2d 321, 327.

Plaintiff's position here is that defendants consented to the sale after being fully informed of the fact that he and his wife were purchasing a substantial part of the property, including that portion then occupied by defendant's floral shop. Defendants contend that the weight of evidence on this factual question tends to prove that they never consented or agreed to sign or carry out the terms of the proposed contract of sale after they were informed that plaintiff was one of the purchasers. Disposition of this appeal turns on the evidence touching

that point. The trial court found for defendants on that issue.

We have hereto set out the high points of the testimony that throw light on that question. Plaintiff says he informed Pfeiffer that he was one of those who desired to purchase the property, while they were having coffee, prior to the day the contract was drawn, and that Pfeiffer stated that he was glad. Pfeiffer stated that he knew nothing of plaintiff's interest as a purchaser until he was summoned to the office of plaintiff's attorney and handed a copy of the contract. Plaintiff says that Pfeiffer was present in the attorney's office while the contract was being dictated and drawn, and that he took an active part in providing descriptions and other data; but Pfeiffer says he did not go to the office until about 5 p. m., at which time he was shown a copy of the proposed contract, was tendered some checks as earnest money, and was requested to sign the contract. Pfeiffer's testimony in this regard is partially corroborated by that of one of the proposed purchasers; and plaintiff's testimony to the contrary is, to some extent, impeached by his previous testimony as it appears in a deposition, although he attempted to explain the apparent inconsistency.

■■ The law is that before the principal can be bound to sell to his agent, in this kind of case, it must appear that he consented to such sale *after* he became fully informed of the agent's interest. Holt v. Joseph F. Dickmann Real Estate Co., Mo. App., 140 S.W.2d 59, 63. In view of the conflict of evidence on the vital question of defendant's knowledge, and of his consent to the sale, *after* being fully informed, we cannot say that the judgment is clearly erroneous. Pfeiffer did not sign the contract when it was presented to him at the office of plaintiff's attorney, nor did he accept the tendered checks. He stated that he sought to hold plaintiff's attorney "at bay" until he "found out more about it." We cannot say that the judgment is clearly erroneous.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.