Helen R. HUBER, Glick Real Estate Company, a Corporation, and. Eugene Glick, (Plaintiffs), Respondents,

v.

Solon GERSHMAN and Solon Gershman Realtors, Inc., a Corporation, Defendants (Solon Gershman Realtors, Inc., Defendant and Third-Party Plaintiff, Appellant, Hope Komm and Blanche Komm, Individually and as Executrix of the Estate of David R. Komm, Deceased, Third-Party Defendants.)

No. 29249.

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1955.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 23, 1956.

Dissenting Opinion Filed Feb. 23, 1956 as Modified March 6, 1956.

Transferred to Supreme Court March 6, 1956.

Adolph K. Schwartz, St. Louis, Sievers, Reagan & Schwartz, St. Louis, of counsel, for appellant.

Kerth, Thies & Schreiber, Clayton, for respondents.

WOLFE, Commissioner.

This is an action to recover an earnest money deposit made by the plaintiffs who intended to purchase a parcel of real estate in the City of St. Louis. Plaintiffs, after making the deposit, declined to go through with the purchase and seek recovery of the deposited sum from the agent to whom the money was paid. The agent joined the principals, the owners of the property, as third-party defendants, with a prayer for judgment over against the principals if the plaintiffs should prevail. The trial was to the court on the main issue and resulted in a judgment in favor of the plaintiffs and against the agent defendant in the sum of $2,808.30. The issues as to the third-party defendant were submitted to a jury, which returned a verdict in favor of Solon Gershman Realtors, Inc., in the sum of $1,250 with interest. From the judgment entered on all issues defendant Solon Gershman Realtors, Inc., has appealed.

The facts of the case are as follows: Some property located on Ivanhoe Avenue in the City of St. Louis was owned by Hope Komm, Blanche Komm, and David R. Komm. It consisted of a city lot upon which was erected a theatre building known as the Ivanhoe Theatre. The theatre was under a lease to the Ivanhoe Theatre Corporation and the payment of the rentals were guaranteed by a guaranty agreement signed by Bess Schulter, who was president of the Ivanhoe Theatre Corporation. The rents were paid to a Louis Jablonow, who was the son-in-law of Hope Komm. Acting on behalf of his mother-in-law and the other owners of the property, Jablonow put it up for sale with a real estate agent by the name of Solon Gershman Realtors, Inc. A salesman named Shepard working for Glick Real Estate Company called upon Solon Gershman, president of Solon Gershman Realtors, Inc., and discussed the property and later requested a copy of the lease under which it was occupied. This was given to Shepard who subsequently submitted a contract to Gershman for the purchase of the property in the sum of $50,000 signed by Helen R. Huber as purchaser. Gershman in turn submitted the contract to Louis Jablonow, but it was not accepted by the owners and it was returned to Gershman. Shepard then submitted a contract signed by Helen Huber for $52,500, and this was accepted by the owners. Earnest money in the sum of $2,500 was paid by Glick Real Estate Company.

Glick testified that he had never had any conversation with Gershman about the property. He received a copy of the lease and guaranty agreement. He looked at the building and decided to buy it for the Glick Real Estate Company and his son, Eugene Glick, each taking half interest. He had a party by the name of Helen Huber working for him and he wanted to buy it in her name. The contract is a standard form real estate sales contract, acknowledging receipt of earnest money from Helen Huber as purchaser. The contract concluded with a typed-in addition that Solon Gershman Realtors, Inc., and Glick Real Estate Company are to be paid a commission of $2,500, which is to be divided equally between them. Gershman did not know that Helen Huber was not the real purchaser when the contract was signed.

Glick said that he learned after the contract was entered into that rentals under the lease were in default and he demanded return of the $2,500 earnest money paid. Glick, according to Gershman, and not denied by Glick, advertised the theatre for sale after the contract was entered into. Later Eugene Glick told Gershman that they would sell the property at a profit if he could find a buyer for it. Shortly before time for closing the deal under the terms of the contract Glick informed Gershman that the purchase would not be made because the rents were in default and demand was made for the return of the $2,500. According to Gershman this was the first information that he had concerning the rents being in default, and Jablonow who, as we have stated, collected the rents, while testifying on behalf of the plaintiffs, stated that he did not know whether or not the rents were in default at the time the contract of sale was entered into as it was a sort of "mixed-up affair". After the deal with Glick was not closed the property was sold for $52,500 to Bess Schulter, the guarantor on the lease, and all rents owing were paid up.

Blanche Komm was joined both as an individual and as executrix for David R. Komm who had since died and she was per-

mitted to testify over the objection of the defendant that David Komm told Gershman at the time he signed the contract that he wanted Glick to know about the rents being in default and she said that Gershman at the time said that he would tell Glick. She said that they were friends of Glick and wanted him to have his money back. On cross-examination, she stated that she did not know that Glick was the buyer. Gershman denied that he had ever had any conversation with Dave Komm or the other owners about the rents.

Both Blanche Komm and Jablonow testified that they did not want the earnest money forfeited. Glick testified that he offered the property for sale to a Mr. Ben Shifrin who made an investigation of the lease by calling a Mr. Meyer Blocher. Blocher testified on behalf of Glick that he informed Shifrin that Bess Schulter was denying liability on her guaranty of the lease because she had not been notified of the nonpayment of rent. Gershman, after receiving a demand for the return of the money, wrote a letter to Glick suggesting that the whole matter be submitted to the St. Louis Real Estate Board for arbitration, but Glick did not answer the letter and instead brought this suit in the name of Helen R. Huber, Glick Real Estate Company, a corporation, and Eugene Glick. It was admitted that Helen Huber had no interest in the transaction.

The petition upon which the evidence was submitted alleged that Solon Gershman acting on behalf of the Solon Gershman, Inc., had fraudulently represented that the rents under the lease were paid up. However, Glick stated that no representations of any nature were made to him and he did not in fact talk to Gersham prior to entering the contract. The question of any fraudulent representations having been thus eliminated, plaintiffs at the close of all the evidence amended their petition and submitted their case to the court on the theory that there was no meeting of the minds and consequently no valid contract existed. They reach this conclusion upon the premise that Glick would not have bought the

property if he had known that the rents were in default and that David Komm wanted Glick to know this.

■ Blanche Komm was not barred as a witness because of the death of her husband who was a co-party to the contract with her. Here the contract sued on was made on one side by two or more persons having joint interests, one of whom has died. That fact of itself does not disqualify the surviving person having a joint interest from testifying. Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 67 A.L.R. 489; McConnon & Co. v. Kuhlmann, 220 Mo.App. 821, 278 S.W. 822; Kerr v. Prudential Ins. Co., 238 Mo.App. 972, 194 S.W.2d 706.

■ There was not, however, any credible evidence that the rents were in default. The man who was putting the property up for sale for all of the owners, Mr. Jablonow, could not say that the rents were in default at the time the contract was entered into although he had collected the rents as agent for the owners. Then, too, the contract provides that it "is the entire contract" and that "neither party may be bound by representations as to value or otherwise". That there was a valid contract in writing for the sale of the property seems to be beyond question.

It was also the contention of the plaintiffs-respondents that Blanche Komm did not want the earnest money forfeited. This was doubtlessly true as Glick was a friend of hers and the owners had sold the property at the figure all of them had set and had collected the rents owing. It is asserted that she as one of the principals had a right to direct the agent. It may, of course, be generally asserted that an agent is the arm of the principal and subject to the principal's direction. But we have more than such a simple relationship here, for it is provided in the contract as follows:

> "Earnest deposit to be retained by Listing Agent, without interest, but agent not liable for earnest deposit until actually in form of cash in hands of agent; if sale is closed, earnest deposit to apply on sale commission;

if purchaser shall fail to pay when due additional earnest deposit (if required by contract) or if sale be not closed by date fixed therefor owing to failure of performance by purchaser, earnest deposit shall be forfeited by purchaser, but purchaser shall nevertheless be bound to fulfillment of contract if so determined by seller, but this shall not entitle purchaser to enforce sale. *Forfeited earnest deposit shall go first toward reimbursing expenses of agent, and balance to go one-half to seller and one-half to agent."* (Italics ours.)

■ The owners therefore could only waive forfeiture of the earnest money by paying the sum due to the agent under the contract and were not free to direct the agent, who had procured the purchaser, to give the money back without any recompense for his efforts. Waltermire v. Stuart, Mo.App., 222 S.W.2d 945; Doerner v. St. Louis Crematory & Mausoleum Co., Mo. App., 80 S.W.2d 721; Sample v. Bank of Poplar Bluff, 239 Mo.App. 1152, 207 S.W.2d 55.

■■ Moving now to the consideration of the position of the Glick Real Estate Company, a corporation, Eugene Glick and Helen Huber, we may eliminate from any interest Helen Huber, as it is admitted that she was a "straw party". The Glicks claim that their corporation and Eugene were the real intended purchasers. However, this is in denial of the contract where the Glick Real Estate Company appears as agent and it provides that the company shall get half of the commission. A buyer would be entitled to no share of the commission for a sale to himself, yet by this device the Glicks would have been able to cut the purchase price they were to pay by the amount of $1,250, or half the commission, and no one would have been the wiser. But the Glicks made, what they considered later, a bad bargain and they want all of their money back as purchasers. They are confronted with a contract that does not know them as purchasers. If the owners had sought to enforce the contract the Glicks could have said "Look to Helen

Huber, she is the buyer". So they safely and with apparent profit concealed themselves behind a maze of their own construction. The difficulty in which they find themselves now is that they are hedged in without an opening. If they claim as agents they lose half of their money and if they claim as buyers, as they here do, they are confronted with a contract of their own procurement as agents for the owners of the property. They are without relief. When one assumes to act and declares himself to be the agent so that he may secretly buy to his own profit, neither law nor equity will relieve him, for an agent is required to make a full disclosure of his position. Utlaut v. Glick Real Estate Co., Mo.Sup., 246 S.W.2d 760; Curotto v. Hammack, 362 Mo. 457, 241 S.W.2d 897, 26 A.L.R.2d 1302; Meek v. Hurst, 223 Mo. 688, 122 S.W. 1022.

█ The situation in which Solon Gershman, Inc. was found is set forth by the contract. The underlined above-quoted sentence provides that the agent shall first recover his expenses from the earnest money forfeited by the buyers' failure to conclude the purchase. Next he shall have half of the remainder and the owners the other half. The owners are the only ones having a claim on the remaining half and they have made no demand for it and do not here do so. The only direction Gershman ever received was to give Glick back $2,500. Whatever sum that Solon Gershman, Inc., may now have over and above the amount due it under the contract belonged to the owners and not to the Glicks and therefore the latter are entitled to no judgment.

█ The action against the owners as third-party defendants was predicated solely upon the premise that if the agent was liable to the Glicks the owners were liable to the agent. Since it appears that the agent is not liable to the Glicks the judgment for $1,250 in favor of Solon Gershman Realtors, Inc., against the owners should not stand.

For the reasons stated, it is the recommendation of the Commissioner that the judgment in favor of the plaintiffs and against defendant Solon Gershman Real-tors, Inc., and the judgment against Hope Komm and Blanche Komm, individually and as executrix of the Estate of David R. Komm, deceased, in favor of Solon Gershman Realtors, Inc., be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed in accordance with the recommendation of the Commissioner.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.

FRANKLIN FERRISS, Special Judge (dissenting).

It does not appear just to me to bar the plaintiffs from any recovery at all and to permit defendant Gershman to retain the entire earnest money deposit.

The facts in this case are most unusual, and the decision should be limited carefully to these facts and not extended to promulgation of general principles of law.

It is true that the conduct of plaintiff Glick Real Estate Company has not been above reproach. Their action in using plaintiff Huber, a straw-party, as apparent purchaser and obtaining a share of the commission for selling the property to themselves does not invite sympathy, but the persons presumably misled by this device and entitled to complain are the sellers. Yet in this case the outstanding fact is that the sellers did not complain and have made no effort to resist the plaintiffs' effort to recover the earnest money deposit. On the contrary, the sellers thought the plaintiffs should get their deposit back and so expressed themselves.

This is not a suit for a share of the agreed commission, as if it had been earned by plaintiff, Glick Real Estate Company. It is a suit for return of the earnest money deposit which plaintiffs claimed should not be forfeited because of either lack of a meeting of the minds or a mutual rescission of the contract by purchasers and sellers. I agree that the first ground of complaint is

not available to plaintiffs. But there is substantial evidence that the sellers acquiesced in the plaintiffs' refusal to complete the contract and urged the return of the earnest money deposit, thus bringing about a rescission by mutual consent. 91 C.J.S., Vendor & Purchaser, § 124, pp. 1052–1053.

It seems clear that the sellers had this right subject to their agent Gershman's interest in the deposit. Gershman produced a purchaser ready, willing and able to buy at the price the sellers agreed to take for their property. He is, therefore, entitled to the share in the earnest money deposit which the contract gave him in the event of a forfeiture, namely, his expenses as agent plus one-half the remainder of the deposit. The other one-half would have gone to the sellers except that they disclaimed any interest in it in favor of plaintiffs. What right has Gershman to complain if this Court, recognizing the sellers' disclaimer, awards the remaining one-half to plaintiffs? Gershman has no just claim to any more than his contract gives him for his services. I believe that substantial justice will be done if the plaintiffs are allowed to recover that portion of the earnest money deposit remaining after Gershman retains the amount due him, namely, his expenses plus one-half the balance.

I am reinforced in this view by a reading of the cases of Larner-Diener Realty Co. v. Fredman, Mo.Sup., 266 S.W.2d 689, and Houtz v. Hellman, 228 Mo. 655, 128 S.W. 1001. In the Houtz case plaintiff vendee was denied specific performance of his contract on the ground that he came into Court with unclean hands. Also, in the Larner-Diener Realty Co. case the Supreme Court refused to grant specific performance, this time on the ground that the plaintiff-vendee was the agent for the defendant-vendor and made no disclosure to defendant-vendor of plaintiff's interest as vendee in the transaction. *In both cases the Supreme Court ruled that the plaintiff-vendees should recover their earnest money deposits,* which were held by the vendors.

It is true that in those cases the earnest money deposits were not and could not have been forfeited on the ground of the vendees' failure to consummate the sale (the vendees were seeking to perform), and hence the Court's order to return the earnest money merely proves that the plaintiffs were not *disentitled* to the return of the money because of their unclean hands or their failure to disclose their true position, namely, that of purchaser. Applied to the facts in the instant case, this rule means that where plaintiffs are otherwise entitled to the return of their earnest money, or at least a portion thereof, on account of the sellers' waiver of any forfeiture and their acquiescence in a rescission of the contract, then plaintiffs' concealment of their position will not bar such a recovery by them.

The reason for this rule is not hard to discover. A contrary rule would mean that a purchaser violating a duty of disclosure not only could not enforce his contract, but no matter how much he had deposited as earnest money or had paid to the seller on the purchase price, he would forfeit all of it to a seller who refused to go through with the contract or who acquiesced in a mutual rescission thereof. Neither the law of contracts nor the law of agency requires such a harsh and punitive rule. In holding otherwise, the majority opinion in my judgment conflicts with the opinions of the Missouri Supreme Court in Larner-Diener Realty Co. v. Fredman, Mo.Sup., 266 S.W. 2d 689, and Houtz v. Hellman, 228 Mo. 655, 128 S.W. 1001. For that reason, I request that the case be certified to the Supreme Court of Missouri for final and authoritative determination.

PER CURIAM.

The opinion in this cause, reversing the decision of the court below, being deemed by one of the Judges of this court to be contrary to previous decisions of the Supreme Court of Missouri, the cause is hereby transferred for final determination to the Supreme Court of Missouri.